**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| COLONY PLACE SOUTH, INC. | ) |
| d/b/a VOLVO CARS PLYMOUTH | ) |
| and 25 FALMOUTH ROAD, INC. | ) |
| d/b/a VOLVO CARS CAPE COD | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No.: ___1:21-CV-11226_____ |
| | ) |
| VOLVO CAR USA LLC, FIDELITY | ) |
| WARRANTY SERVICES, INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, COLONY PLACE SOUTH, INC. d/b/a VOLVO CARS PLYMOUTH ("Volvo Plymouth") and 25 FALMOUTH ROAD, INC. d/b/a VOLVO CARS CAPE COD ("Volvo Cape Cod") (collectively the "Plaintiffs" or "Premier Volvo Dealerships") by way of this Complaint and Demand for Jury Trial against Defendants, VOLVO CAR USA LLC ("Volvo USA") and FIDELITY WARRANTY SERVICES, INC. d/b/a JM&A Group ("JM&A") (collectively, "Defendants"), alleges:

### Introduction

Plaintiffs are authorized Volvo new motor vehicle dealerships. Volvo USA is the manufacturer/distributor of Volvo motor vehicles in the United States and as such is subject to the Massachusetts Motor Vehicle Dealer Act.  M.G.L.A. 93B § 1, *et seq.* (hereinafter the "Dealer Act").  Similarly, JM&A is Volvo USA's agent and/or franchisor

representative, subjecting it to the Dealer Act in certain instances too.  The Dealer Act declares certain unfair methods of competition and unfair or deceptive acts or practices unlawful in an attempt to create equity in an otherwise one-sided commercial relationship between multi-billion-dollar automotive manufacturers or distributors and relatively small, locally-owned motor vehicle dealers.   One such unfair method of competition is manufacturers attempting to unfairly shift warranty repair costs onto dealers for performing repair work dealers are obligated to provide to consumers free of charge on behalf of the manufacturers.  To avoid this unfair manufacturer practice, the Dealer Act requires that franchisors reimburse dealers at their "retail rate" for repairs performed free of charge to customers pursuant to a manufacturer's warranty, prepaid maintenance plan or other similar product.  As alleged below, Volvo USA, either itself or with the aid of JM&A, is violating Massachusetts law by paying less than retail rate for repairs performed under the Volvo Prepaid Maintenance Plan, and Plaintiffs seek a ruling from this Court vindicating that position and ordering Volvo USA to pay the monies it owes Plaintiffs.

## Parties

1.      Volvo Plymouth is a Massachusetts corporation with its principal place of business at 500 Yarmouth Rd., Hyannis, MA 02601.

2.      Volvo Plymouth is a "dealer," "motor vehicle dealer," or "dealership" as defined in M.G.L.A. 93B § 1, and operates a franchised motor vehicle dealership at 500 Colony Place, Plymouth, MA 02360, where it sells and services Volvo products pursuant to a "franchise" or "franchise agreement" (the "Franchise"), as defined by M.G.L.A. 93B § 1. *Attached as Exhibit A.*  The Franchise incorporates "Standard Provisions" written by Volvo USA.

3.      Volvo Cape Cod is a Massachusetts corporation with its principal place of business at 500 Yarmouth Rd., Hyannis, MA 02601.

4.      Volvo Cape Cod is a "dealer," "motor vehicle dealer," or "dealership" as defined by M.G.L.A. 93B § 1, and operates a franchised motor vehicle dealership at 270 North Street, Hyannis, MA 02601, where it sells and services Volvo products pursuant to a "franchise" or "franchise agreement" (the "Franchise"), as defined by M.G.L.A. 93B § 1. *Attached as Exhibit B.*  The Franchise incorporates "Standard Provisions" written by Volvo USA.

5.      Volvo USA is a Delaware limited liability company with its principal place of business at 1800 Volvo Place, Mahwah, NJ 07430.  Volvo NA's registered agent in Massachusetts is CT Corporation System, 155 Federal Street, Suite 700, Boston, MA 02110.

6.      Volvo USA is engaged in the business of distributing new motor vehicles and related parts and accessories in all 50 states, and is the sole authorized distributor in the United States of Volvo branded automobiles to a nationwide network of franchised Volvo dealers.  Volvo USA is both a manufacturer and a distributor as defined by M.G.L.A. 93B § 1 as it manufactures Volvo brand vehicles and sells, and offers to sell, those vehicles to new motor vehicle dealers (including Plaintiffs) in this State.

7.      JM&A is a Florida corporation with its principal place of business at 500 Jim Moran Blvd., Deerfield Beach, FL 33442.  JM&A's registered agent in Massachusetts is United Agent Group Inc., 225 Cedar Hill Street, #200, Marlborough, MA 01752.

8.      JM&A is engaged in the business of offering, among other things, warranties, prepaid maintenance plans, and other products related to the servicing and maintenance

of new motor vehicles.  JM&A is both an agent of Volvo USA, as that term is used in M.G.L.A. 93B § 4(c)(12), as well as a franchisor representative of Volvo USA, as that term is defined in M.G.L.A. 93B § 1.

## Jurisdiction

9.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendants pursuant to 18 U.S.C. §§ 1965(a) and (d).  Defendants have a registered agent in Massachusetts and regularly conduct and transact business throughout the State of Massachusetts, including in Cape Code and Plymouth, Massachusetts with Plaintiffs.  Further, Volvo USA has obtained a license from the Massachusetts Department of Highway Safety and Motor Vehicles to conduct business in Massachusetts.  Thus, both Defendants have the requisite minimum contacts with the State of Massachusetts and this Judicial District.  Moreover, in selling new motor vehicles to franchised dealers throughout Massachusetts, Volvo USA intentionally availed itself of the laws of Massachusetts.  Similarly, by selling and/or administering other products, such as the Volvo PPM, JM&A has intentionally availed itself of the laws of Massachusetts.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a) in that jurisdiction is founded solely on the basis of diversity, and Defendant, by virtue of its systematic and continuous business contacts in this District, resides in this District.

## Facts Applicable to All Claims

<u>Background on the Dealer Act</u>

12.    As a new motor vehicle dealership, Plaintiffs are protected from certain conduct and threats made by motor vehicle manufacturers and/or distributors pursuant to the Dealer Act.

13.    The Dealer Act is a remedial statutory scheme enacted to redress the economic imbalance and unequal bargaining power between large automobile manufacturers and local dealerships, protecting dealers from unfair termination of their franchise agreements and other retaliatory and coercive practices by automobile manufacturers.  The harm that can be caused by manufacturers' abusive practices is exacerbated due to the extremely concentrated market in which new motor vehicle dealers operate.

14.    The Dealer Act entitles automobile dealers, like Plaintiffs, to bring legal claims against an automobile manufacturer and/or distributor, like Volvo USA, for damages, attorneys' fees and costs of the suit for the manufacturer's or distributor's failure to act in good faith in performing the terms of its dealer and/or franchise agreement, among many other bases.

15.    Similar protective legislation has been enacted throughout the United States. The United States Supreme Court has recognized the importance and validity of these remedial statutes as explained by Justice Brennan in *New Motor Vehicle Board v. Orrin W. Fox Co.*:

> Dealers are with few exceptions completely dependent on the manufacturer for their supply of cars. **When the dealer has invested to the extent required to secure a franchise, he becomes in a real sense the economic captive of his manufacturer.**  The substantial investment of his own personal funds by the dealer in the business, the inability to convert easily the facility to other uses, the dependence

upon a single manufacturer for supply of automobiles, and the difficulty in obtaining a franchise from another manufacturer all contribute toward **making the dealer an easy prey for domination by the factory**.   On the other hand, from the standpoint of the automobile manufacturer, any single dealer is expendable.  The faults of the factory-dealer system are directly attributable to the superior market position of the manufacturer.

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 439 U.S. 96, 100 n. 4 (1978) (*quoting* S. Rep. No. 2073, 84th Cong., 2d Sess., 2 (1956)) (emphasis added).

16.    By its own terms, the Dealer Act necessarily trumps the terms of a franchise agreement (e.g., the Franchise) between a distributor (e.g., Volvo USA) and its dealers (e.g., Volvo Plymouth and Volvo Cape Cod).  M.G.L.A. 93B § 16(a).  Thus, to create balance in an otherwise inequitable contractual relationship, Massachusetts law overrides various provisions of a franchise agreement and provides Plaintiffs with additional statutory protections.

<u>Background on Volvo's Prepaid Maintenance Plan</u>

17.    In 2018, Volvo USA announced a "VIP New Product Launch" that updated and expanded its Prepaid Maintenance Plan ("PPM"), entitled "Volvo Wear Protection" (hereinafter "Volvo PPM").  *See* Exhibit C.

18.    PPMs are products that automotive manufacturers offer, sometimes included in the purchase of a new vehicle or other times for an additional fee, for routine maintenance services on motor vehicles.   PPMs are distinct from an automotive manufacturer's warranty, which covers repairs for defects related to the manufacturing of the product.

19.    On the other hand, PPMs allow consumers to prepay for routine maintenance procedures like oil changes, tire rotations, air filter replacements, and more. PPMs usually offer a monetary savings to the consumer compared to purchasing each of

these services individually, at retail when needed.  Further, the Volvo PPM also allows the consumer the flexibility to have the routine maintenance performed at any Volvo-branded dealership in the country.

20.    PPMs have been offered for years by independent third-parties or individual automotive dealerships, but automotive manufacturers also offer their own versions, like Volvo USA does with the Volvo PPM.

21.    Volvo USA uses a third-party administrator, JM&A, to handle the paperwork and administration of the maintenance plan.  However, the Volvo PPM is offered by Volvo USA, branded with Volvo USA's logo, discussed on Volvo USA's website as an option it offers to consumers, and actively advertised by Volvo USA.  Moreover, the Volvo PPM's materials note that it includes "service by Volvo trained technicians, using the latest procedures, specialized tools and Volvo Genuine Parts."  Further, Volvo USA offers dealers factory incentive payments for selling the Volvo PPMs.  Finally, Plaintiffs believe that Volvo USA receives a commission from JM&A on the revenues generated by the sale of each Volvo PPM.

22.    An example of Volvo USA's advertising and marketing of the Volvo PPM from its corporate website is attached hereto as Exhibit D.

23.    Volvo USA and JM&A have also teamed up to operate a website exclusively dedicated to further promoting the Volvo PPM.[1]

24.    Volvo USA requires that its dealers offer the Volvo PPM.  And, it also requires dealers that do offer the Volvo PPM perform maintenance under any Volvo PPM no matter which dealer sold the product and/or vehicle to the consumer.  Thus, dealers

---

[1] The website can be visited at the following URL: http://www.volvobrandedprogram.com/main/.

are obligated to provide repairs services on Volvo PPMs identically to those that it provides pursuant to Volvo USA's manufacturer's warranty.

25.     However, unlike warranty repairs, Volvo USA refuses to pay automotive dealers their retail service rates when reimbursing them for providing services under the Volvo PPM in violation of Massachusetts law.

### Background on Manufacturer Warranty and PPM Obligations Generally

26.     Manufacturer-mandated repair services performed by franchised motor vehicle dealers have long been a point of contention in the commercial relationships between the parties.

27.     In fact, as the Federal District Court for the District of Maine recognized years ago,

> [s]ince the parties themselves have been unable over the course of the last three decades to negotiate satisfactorily their conflicting positions in the warranty reimbursement area, they have each periodically sought to enlist the support of the legislative and judicial arms of government. Each legislative action has been followed by resort to the judicial branch, spawning new legislation and new judicial rulings, a seemingly never ending cycle, perfectly exemplified by the instant case. See, e.g., *Darling's v. Ford Motor Company*, 2003 ME 21, 825 A.2d 344; *Acadia Motors v. Ford Motor Co.*, 2002 ME 102, 799 A.2d 1228; *Nissan Motor Corp. In U.S.A. v. Darling's Honda/Nissan*, 1999 Me.Super. LEXIS 190 (Me.Super.Ct. July 7, 1999); *Darling's d/b/a Darling's Bangor v. Ford Motor Co.*, 1998 ME 232, 719 A.2d 111; *American Honda Motor Co. v. Darling's Honda/Nissan*, 1997 Me.Super. LEXIS 225 (Me.Super.Ct. July 27, 1997); *Darling's d/b/a Darling's Bangor v. Ford Motor Co.*, No. 95–CV–398–B–H (Me.D.1995); *Acadia Motors v. Ford Motor Co.*, 844 F.Supp. 819 (D.Me.1994), aff'd in part, rev'd in part on other grounds, 44 F.3d 1050 (1st Cir.1995); *Darling's Bangor Ford/VW/Audi v. Ford Motor Co.*, 92–SC–229 (Me.Dist.Ct.3, S.Pen., Oct. 20, 1992).

*All. of Auto. Mfrs. v. Gwadosky*, 304 F. Supp. 2d 104, 106–07 (D. Me. 2004), aff'd *Alliance of Auto. Mfrs. v. Gwadosky*, 430 F.3d 30 (1st Cir. 2005), cert. denied 547 U.S. 1143 (2006).

28.     Automotive dealers provide valuable services to automotive manufacturers by performing warranty and recall repairs based on the manufacturers' shortcomings in the

production process. Manufacturers have an incentive to keep warranty compensation as low as possible, while motor vehicle dealers want to keep the warranty-related work as profitable as customer-paid work to maintain the efficiency and profit margins of their service businesses. Absent legal intervention, this dichotomy would naturally lead to a manufacturer advantage, as they hold all of the power in franchise relationships. Instead, though, statutes in almost all fifty (50) states have developed to govern this often-litigated area of manufacturer dealer relations.

29. For example, warranty (or PPM) reimbursement legislation "ensures that manufacturers pay market price when they would otherwise be sheltered from the market because of 'the disparity in bargaining power between automobile manufacturers and their dealers.'" *Acadia Motors, Inc. v. Ford Motor Co.*, 844 F. Supp. 819, 824 (D. Me. 1994) (quoting *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 439 U.S. 96, 100 (1978)). Further, "[l]ike many states, Connecticut regulates the relationship between manufacturers and dealers –in particular, the issue of warranty reimbursement – and has done so for decades, because of the perceived asymmetry in bargaining power." *Alliance of Auto. Mfrs., Inc. v. Currey*, 984 F.Supp.2d 32, 40 (D.Conn. 2013) *aff'd* 610 Fed.Appx. 10 (2d Cir.2015), *cert denied* 136 S.Ct. 1374 (2016).

30. Accordingly, "[t]he statute thus protects the franchised dealer from being required to accept lower profits on repairs it is required to provide to warranty customers than it receives on repairs for retail customers for whom it provides exactly the same services." *G/C Volkswagen Corp. v. Volkswagen of America, Inc.*, No. 97 CIV. 8364(JGK), 1998 WL 799174, at *4 (S.D.N.Y. Nov. 16, 1998). Thus, "the statute mandates that when a dealer qualifies, the manufacturer must 'reasonably compensate' that dealer." *See Don*

*Johnson Hayward Motors, Inc., et al*, Case No. 16-cv-1350-pp, 2018 WL 4568822, at *6 (E.D. Wis. 2018).

31.    Indeed, even the United States Congress has recognized the disparity in bargaining power that goes unchecked absent the statutory provisions. "As a result of the imbalance in bargaining power inherent in this relationship, manufacturers possess unparalleled leverage over dealers and potential franchises." S.Rep. No. 107-266 (2002), as reprinted in 2002 WL 32972956. "Manufacturers also exercise considerable control over the flow of revenue to dealers, such as warranty payments." *Id.* Thus, while relatively obscure, ensuring fairness in reimbursement for performance of warranty and maintenance work on manufacturers' behalf by automotive dealers ensures a healthy, functioning and beneficial local dealer network.

<u>Manufacturer Retail Rate Reimbursement Obligations under Massachusetts Law</u>

32.    In crafting the Dealer Act, the Massachusetts' Legislature also recognized the importance of regulating manufacturer payments to dealers for warranty repairs as well as manufacturer offered services, like PPMs.

33.    In pertinent part, the Dealer Act commands that "a manufacturer or distributor…shall adequately and fairly compensate any motor vehicle dealer who, under its franchise obligations furnishes labor, parts and materials under the warranty or **maintenance plan**…issued by the manufacturer or distributor or its common entity…" M.G.L.A. 93B § 9(b)(1) (emphasis supplied).

34.    It goes on to mandate that "fair and adequate compensation shall not be less than the rate and price customarily charged for retail customer repairs and computed under paragraph (2)." *Id.*

35.     Importantly, the Dealer Act also provides that "[a] manufacturer or distributor shall not implement or continue a policy, procedure or program to any of its dealers in the commonwealth for compensation which is inconsistent with this subsection."  M.G.L.A. 93B § 9(b)(2)(vii).

36.     And, the Dealer Act also forbids a manufacturer or distributor like Volvo USA from

> []obtain[ing] money, good, services, anything of value, or any other benefit from any other person with whom the motor vehicle dealer does business, on account of or in relation to the transactions between the dealer and the other person as compensation except for services actually rendered, unless the benefit is promptly accounted for and transmitted to the motor vehicle dealer.

M.G.L.A. 93B § 4(c)(9).

37.     Moreover, the Dealer Act states that it is an unfair method of competition and unfair or deceptive act or practice for a manufacturer, distributor or franchisor representative:

> to act to accomplish, either directly or indirectly through any parent company, subsidiary, or agent, what would otherwise be prohibited under this chapter on the part of the manufacturer or distributor.  This section shall not limited the right of any parent company, subsidiary, or agent to engage in business practices otherwise lawful in accordance with the usage of the trade in which it is engaged.

M.G.L.A. 93B § 4(c)(12).

38.     Finally, the Dealer Act's applicability is also broad and clearly covers the agreements related to Volvo PPM, no matter between whom they are executed.  It states in pertinent part that

> This chapter shall apply to all actions by a manufacturer or distributor which relate to the franchise relationship and which arise under any written or oral agreement between the manufacturer or distributor with a motor vehicle dealer including, but not limited to, the franchise offering, the franchise agreement, sales of goods, services or advertising, leases or mortgages of

real or personal property, promises to pay, security interests, pledges, insurance contracts, advertising contracts, construction or installation contracts, servicing contracts, and all other such agreements in which said manufacturer or distributor has any direct or indirect interest.

M.G.L.A. 93B § 11.

Premier Volvo Dealerships' Damages

39.     Volvo Plymouth has established its retail reimbursement rate with Volvo USA in accordance with the Dealer Act.  Volvo USA pays it $220.00 for labor performed on warranty repairs, its established retail rate.

40.     However, Volvo Plymouth only receives $175 per hour for work performed pursuant to Volvo's PPMs it sells and is further forced to accept whatever rate other dealers receive when servicing vehicles pursuant to Volvo PPMs those dealers have sold.[2]

41.     Volvo Cape Cod has established its retail reimbursement rate with Volvo USA in accordance with the Dealer Act.  Volvo USA pays it $220.00 for labor performed on warranty repairs, its established retail rate.

42.     However, Volvo Cape Cod only receives $128 per hour for work performed pursuant to Volvo's PPMs it sells and is further forced to accept whatever rate other dealers receive when servicing vehicles pursuant to Volvo PPMs those dealers have sold.

43.     Both Volvo Plymouth and Volvo Cape Cod continue to perform maintenance pursuant to Volvo's PPM on an almost daily basis, so their damages continue to accrue and will unless Defendants' actions are enjoined.

---

[2] Just recently, Volvo USA introduced a version of the Volvo PPM that offers dealers reimbursement at $220 per hour. However, to receive the higher reimbursement rate, dealers must pay **more** for the PPM than a dealer that receives a lower reimbursement amount.  Thus, not only does Volvo not pay the reimbursement amount that is required under Massachusetts law, but Volvo also charges **more** for identical products to those dealers who desire the correct reimbursement rate.

44.     Importantly, the Dealer Act also provides the Premier Volvo Dealerships with a cause of action for damages and equitable relief to vindicate their rights. M.G.L.A. 93B § 15(a). And, if the Premier Volvo Dealerships prevail and can show that Defendants asserted their defenses in bad faith, they are entitled to reasonable attorneys' fees as well as their costs in bringing suit.  *Id.* at § 15(c).

45.     Pursuant to subsection (b), the Premier Volvo Dealerships have engaged in good faith efforts to resolve this dispute without the need for court intervention.  *Id.* at §15(b).  However, Volvo USA has refused to settle the matter to the Premier Volvo Dealerships' satisfaction.

### COUNT I
### (Violation of M.G.L.A. 93B § 9(b)(1) by Volvo USA – Damages for
### Failure to Pay Retail Rate Reimbursement)

46.     Plaintiffs reallege and incorporate paragraphs 1-45 as if set forth fully herein.

47.     As evidenced by Exhibits C and D to this Complaint, Volvo USA actively advertises and markets the Volvo PPM to purchasers of Volvo-branded motor vehicles from Plaintiffs' dealerships and others around the country.

48.     Pursuant to the terms of Volvo USA's PPM, dealers that sell Volvo PPMs perform maintenance to any vehicle owner who purchased a Volvo PPM, no matter which Volvo-brand dealer sold that particular Volvo PPM.

49.     However, Volvo USA fails to reimburse the Premier Volvo Dealerships at their retail rates for labor performed pursuant to the Volvo PPMs.

50.     Volvo Plymouth's established retail rate for service labor performed in doing maintenance or repairs is $220.00.

51.    Under the Volvo PPMs Volvo Plymouth has sold, Volvo USA, through JM&A as its agent and/or franchisor representative, only compensates Volvo Plymouth at $175 per hour for labor performed in doing maintenance work and Volvo USA compensates Volvo Plymouth at even lower rates when it services vehicles pursuant to Volvo PPMs sold by other dealers.

52.    Volvo Cape Cod's established retail rate for service labor performed in doing maintenance or repairs is $220.00.

53.    Under the Volvo PPMs Volvo Cape Cod has sold, Volvo USA, through JM&A as its agent and/or franchisor representative, only compensates Volvo Cape Cod at $128 per hour for labor performed in doing maintenance work and Volvo USA compensates Volvo Cape Cod at even lower rates when it services vehicles pursuant to Volvo PPMs sold by other dealers.

54.    Volvo USA is required to compensate the Premier Volvo Dealerships at their established retail rates for labor performed pursuant to prepaid maintenance plans. M.G.L.A. 93B § 9(b)(1).

55.    Volvo USA has failed to fulfill its obligations under this statute and has damaged the Premier Volvo Dealerships.

56.    WHEREFORE, pursuant to M.G.L.A. 93B § 15(a), Plaintiffs request that this Court enter a judgment against Volvo USA awarding them compensatory damages, attorneys' fees and costs and other relief this Court deems just and equitable.

## COUNT II
### (Violation of M.G.L.A. 93B § 9(b)(1) by Volvo USA – Declaratory and Injunctive Relief for Failure to Pay Retail Rate Reimbursement)

57.    Plaintiffs reallege and incorporate paragraphs 1-45 as if set forth fully herein.

58.     As evidenced by Exhibits C and D to this Complaint, Volvo USA actively advertises and markets the Volvo PPM to purchasers of Volvo-branded motor vehicles from Plaintiffs' dealerships and others around the country.

59.     Volvo USA requires that dealers that sell Volvo PPMs perform maintenance to any vehicle owner who purchased a Volvo PPM, no matter which Volvo-brand dealer sold that particular Volvo PPM.

60.     However, Volvo USA fails to reimburse the Premier Volvo Dealerships at their retail rates for labor performed pursuant to the Volvo PPMs.

61.     Volvo Plymouth's established retail rate for service labor performed in doing maintenance or repairs is $220.00.

62.     Under the Volvo PPMs Volvo Plymouth has sold, Volvo USA, through JM&A as its agent and/or franchisor representative, only compensates Volvo Plymouth at $175 per hour for labor performed in doing maintenance work and Volvo USA compensates Volvo Plymouth at even lower rates when it services vehicles pursuant to Volvo PPMs sold by other dealers.

63.     Volvo Cape Cod's established retail rate for service labor performed in doing maintenance or repairs is $220.00.

64.     Under the Volvo PPMs Volvo Cape Cod has sold, Volvo USA, through JM&A as its agent and/or franchisor representative, only compensates Volvo Cape Cod at $128 per hour for labor performed in doing maintenance work and Volvo USA compensates Volvo Cape Cod at even lower rates when it services vehicles pursuant to Volvo PPMs sold by other dealers.

65.     Volvo USA is required to compensate the Premier Volvo Dealerships at their established retail rates for labor performed pursuant to prepaid maintenance plans, including the Volvo PPMs.  M.G.L.A. 93B § 9(b)(1).

66.     Volvo USA has failed to fulfill its obligations under this statute and has damaged the Premier Volvo Dealerships.  Absent Court intervention, Volvo USA will continue to harm the Premier Volvo Dealerships and violate Massachusetts law.

67.     The Premier Volvo Dealerships otherwise meet the requirements for the issuance of injunctive relief under the Federal Rules of Civil Procedure.

68.     WHEREFORE, pursuant to M.G.L.A. 93B § 15(a), Plaintiffs request that this Court enter a judgment declaring that the Volvo PPMs' reimbursement scheme violates the Dealer Act, specifically M.G.L.A. 93B § 9(b)(1), and enter a permanent injunction requiring Volvo USA to compensate the Premier Volvo Dealerships at their retail labor rate for all maintenance work performed pursuant to a Volvo PPM, and any other relief this Court deems just and equitable.

### COUNT III
### (Violation of M.G.L.A. 93B § 9(b)(2)(vii) by Volvo USA – Volvo USA Uses JM&A to Avoid its Statutory Obligations for Retail Rate Reimbursement under the Volvo PPM)

69.     Plaintiffs reallege and incorporate paragraphs 1-45 as if set forth fully herein.

70.     As evidenced by Exhibits C and D to this Complaint, Volvo USA actively advertises and markets the Volvo PPM to purchasers of Volvo-branded motor vehicles from Plaintiffs' dealerships and others around the country.

71.     Volvo USA requires that dealers that sell Volvo PPMs perform maintenance to any vehicle owner who purchased a Volvo PPM, no matter which Volvo-brand dealer sold that particular Volvo PPM.

72.    However, Volvo USA fails to reimburse the Premier Volvo Dealerships at their retail rates for labor performed pursuant to the Volvo PPMs.

73.    Volvo Plymouth's established retail rate for service labor performed in doing maintenance or repairs is $220.00.

74.    Under the Volvo PPMs Volvo Plymouth has sold, Volvo USA, through JM&A as its agent and/or franchisor representative, only compensates Volvo Plymouth at $175 per hour for labor performed in doing maintenance work and Volvo USA compensates Volvo Plymouth at even lower rates when it services vehicles pursuant to Volvo PPMs sold by other dealers.

75.    Volvo Cape Cod's established retail rate for service labor performed in doing maintenance or repairs is $220.00.

76.    Under the Volvo PPMs Volvo Cape Cod has sold, Volvo USA, through JM&A as its agent and/or franchisor representative, only compensates Volvo Cape Cod at $128 per hour for labor performed in doing maintenance work and Volvo USA compensates Volvo Cape Cod at even lower rates when it services vehicles pursuant to Volvo PPMs sold by other dealers.

77.    Volvo USA has established JM&A as the third-party administrator for the Volvo PPM.

78.    On this basis, Volvo USA argues that under the Volvo PPMs it is not required to reimburse to Volvo Plymouth and Volvo Cape Cod at their established retail rates.

79.    In doing so, Volvo USA has implemented a policy, procedure or program that is inconsistent with the Massachusetts' Dealer Act's mandate for retail rate reimbursement

and thus invalid.  Specifically, Volvo USA has attempted (and continues to attempt) to use its policy, procedure or program to avoid paying Plaintiffs the statutorily mandated rate.

80.     WHEREFORE, pursuant to M.G.L.A. 93B § 15(a), Plaintiffs request that this Court enter a judgment against Volvo USA awarding them compensatory damages, attorneys' fees and costs and other relief this Court deems just and equitable.

**COUNT IV**
**(Violation of M.G.L.A. 93B § 4(c)(9) by Volvo USA – Volvo USA Receives**
**Benefit from JM&A from Plaintiffs Selling Volvo PPMs**
**But Does Not Transmit That Benefit to Plaintiffs)**

81.     Plaintiffs reallege and incorporate paragraphs 1-45 as if set forth fully herein.

82.     As evidenced by Exhibits C and D to this Complaint, Volvo USA actively advertises and markets the Volvo PPM to purchasers of Volvo-branded motor vehicles from Plaintiffs' dealerships and others around the country.

83.     Volvo USA requires that dealers that sell Volvo PPMs perform maintenance to any vehicle owner who purchased a Volvo PPM, no matter which Volvo-brand dealer sold that particular Volvo PPM.

84.     However, Volvo USA fails to reimburse the Premier Volvo Dealerships at their retail rates for labor performed pursuant to the Volvo PPMs.

85.     Volvo Plymouth's established retail rate for service labor performed in doing maintenance or repairs is $220.00.

86.     Under the Volvo PPMs Volvo Plymouth has sold, Volvo USA, through JM&A as its agent and/or franchisor representative, only compensates Volvo Plymouth at $175 per hour for labor performed in doing maintenance work and Volvo USA compensates Volvo Plymouth at even lower rates when it services vehicles pursuant to Volvo PPMs sold by other dealers.

87.     Volvo Cape Cod's established retail rate for service labor performed in doing maintenance or repairs is $220.00.

88.     Under the Volvo PPMs Volvo Cape Cod has sold, Volvo USA, through JM&A as its agent and/or franchisor representative, only compensates Volvo Cape Cod at $128 per hour for labor performed in doing maintenance work and Volvo USA compensates Volvo Cape Cod at even lower rates when it services vehicles pursuant to Volvo PPMs sold by other dealers.

89.     Volvo USA has established JM&A as the third-party administrator for the Volvo PPM.  JM&A is thus Volvo USA's agent for the purposes of implementing and maintaining the Volvo PPM.

90.     Upon information and belief, Volvo USA receives a commission or other payment from JM&A for every Volvo PPM that Plaintiffs sell.

91.     However, Volvo USA does not remit that money, thing of value or other benefit to Plaintiffs despite its failure to do so being a violation of M.G.L.A. 93B § 4(c)(9).

92.     WHEREFORE, pursuant to M.G.L.A. 93B § 15(a), Plaintiffs request that this Court enter a judgment against Volvo USA awarding them compensatory damages, attorneys' fees and costs and other relief this Court deems just and equitable.

### COUNT V
### (Violation of M.G.L.A. 93B § 4(c)(12) by Volvo USA and JM&A – Volvo USA Acts Through JM&A to Avoid Its Statutory Obligations to Pay Retail Rate Reimbursement Under the Volvo PPM)

93.     Plaintiffs reallege and incorporate paragraphs 1-45 as if set forth fully herein.

94.     As evidenced by Exhibits C and D to this Complaint, Volvo USA actively advertises and markets the Volvo PPM to purchasers of Volvo-branded motor vehicles from Plaintiffs' dealerships and others around the country.

95.     Volvo USA requires that dealers that sell Volvo PPMs perform maintenance to any vehicle owner who purchased a Volvo PPM, no matter which Volvo-brand dealer sold that particular Volvo PPM.

96.     However, Volvo USA fails to reimburse the Premier Volvo Dealerships at their retail rates for labor performed pursuant to the Volvo PPMs.

97.     Volvo Plymouth's established retail rate for service labor performed in doing maintenance or repairs is $220.00.

98.     Under the Volvo PPMs Volvo Plymouth has sold, Volvo USA, through JM&A as its agent and/or franchisor representative, only compensates Volvo Plymouth at $175 per hour for labor performed in doing maintenance work and Volvo USA compensates Volvo Plymouth at even lower rates when it services vehicles pursuant to Volvo PPMs sold by other dealers.

99.     Volvo Cape Cod's established retail rate for service labor performed in doing maintenance or repairs is $220.00.

100.    Under the Volvo PPMs Volvo Cape Cod has sold, Volvo USA, through JM&A as its agent and/or franchisor representative, only compensates Volvo Cape Cod at $128 per hour for labor performed in doing maintenance work and Volvo USA compensates Volvo Cape Cod at even lower rates when it services vehicles pursuant to Volvo PPMs sold by other dealers.

101.    Volvo USA has established JM&A as the third-party administrator for the Volvo PPM.  JM&A is thus Volvo USA's agent for the purposes of implementing and maintaining the Volvo PPM, as contemplated by M.G.L.A. 93B § 4(c)(12).

102.   On this basis, Volvo USA argues that under the Volvo PPMs it is not required to reimburse to Volvo Plymouth and Volvo Cape Cod at their established retail rates.

103.   In doing so, Volvo USA is acting to accomplish directly or indirectly through an agent what is otherwise prohibited under the Massachusetts's Dealer Act.  To wit, Volvo USA is using JM&A to avoid paying the Plaintiffs the statutorily mandated retail rate reimbursement for work performed pursuant to the Volvo PPM, a violation of M.G.L.A. 93B § 9(b)(1).

104.   Alternatively, JM&A is acting in concert with Volvo USA to circumvent the requirements of M.G.L.A. 93B § 9(b)(1).

105.   WHEREFORE, pursuant to M.G.L.A. 93B § 15(a), Plaintiffs request that this Court enter a judgment against Defendants awarding them compensatory damages, attorneys' fees and costs and other relief this Court deems just and equitable.

**Plaintiffs demand a trial by jury as to all actions and claims so triable.**

Dated: July 29, 2021.


Respectfully Submitted,


/s/ James J. McNulty
James J. McNulty Esq. (B.B.O. # 339940)
jjm@jjmcnultylaw.com
Ryan M. Tradd. Esq. (B.B.O. # 691840)
rtradd@jjmcnultylaw.com
40 Court Street, Suite 1150
Boston, MA 02108
T: 617.263.3300
F: 617.263.1401


**BASS SOX MERCER**


/s/ Jason T. Allen
Jason T. Allen (*pro hac vice* motion forthcoming)
jallen@dealerlawyer.com
W. Kirby Bissell (*pro hac vice* motion forthcoming)
kbissell@dealerlawyer.com
2822 Remington Green Circle
Tallahassee, Florida 32308
T: 850.878.6404
F: 850.942.4869


*Attorneys for Plaintiffs.*