EXHIBIT A





# RETAILER AGREEMENT

# CONTENTS

**Retailer Agreement** ...................................................................................................5

**Article 1        Authorized Retailer**

1.1    Your Appointment. ...........................................................................................5

1.2    The Term of This Agreement. ..........................................................................5

1.3    Your Potential Customers. ...............................................................................5

1.4    Your Area of Responsibility. ............................................................................6

1.5    Trademarks. .....................................................................................................6

**Article 2        Your Volvo Operations**

2.1    The Approved Locations. .................................................................................7

2.2    Other Activities at the Approved Locations. ....................................................7

2.3    Management. ....................................................................................................7

2.4    Capital and Credit Lines. .................................................................................8

2.5    Dealer Management System. ...........................................................................8

2.6    Customer Data. ................................................................................................8

2.7    Monitoring. .......................................................................................................8

**Article 3        Sale and Service of Volvo Products**

3.1    What You Will Sell. ..........................................................................................9

3.2    Your Fixed Operations. ....................................................................................9

3.3    Customer Satisfaction. ...................................................................................10

3.4    New Product Launches...................................................................................10

**Article 4        Your Performance**

4.1    Our Operating Standards................................................................................11

4.2    Your Objectives. .............................................................................................11

4.3    Improvement Programs. .................................................................................11

4.4    Your Business Plan. ........................................................................................11

4.5    Complying with the Law. .................................................................................11

4.6    Our Code of Conduct......................................................................................11

**Article 5        Ownership**

5.1    Current Ownership..........................................................................................13

5.2    Change of Ownership. .....................................................................................13

5.3    Death or Incapacity..........................................................................................14

**Article 6        Termination**

6.1    Termination by You...........................................................................................15

6.2    Termination by Us.............................................................................................15

6.3    Termination After Correction Period. ................................................................16

6.4    Termination for Unsatisfactory Performance. ..................................................17

6.5    What Happens on Termination. ........................................................................17

**Article 7        Terms of Sale**

7.1    Unilateral Amendment. .....................................................................................18

7.2    Price and Payment Terms.................................................................................18

7.3    Supply. ..............................................................................................................18

7.4    Availability. ........................................................................................................18

7.5    Invoicing. ...........................................................................................................18

7.6    Ownership. .........................................................................................................19

7.7    Risk. ...................................................................................................................19

7.8    Insurance............................................................................................................19

7.9    Delivery. .............................................................................................................19

7.10   Examination........................................................................................................19

7.11   Customer Warranties.........................................................................................19

7.12   Product Liability. ................................................................................................19

7.13   Insurance............................................................................................................20

**Article 8        Disputes**

8.1    Mediation............................................................................................................21

8.2    Governing Law. ..................................................................................................21

8.3    Jurisdiction. ........................................................................................................21

**Article 9        Miscellaneous**

9.1    State Law. ..........................................................................................................22

9.2    Confidentiality.....................................................................................................22

9.3    Force Majeure. ...................................................................................................23

9.4     Entire Agreement.............................................................................................24

9.5     Amendment.....................................................................................................24

9.6     Assignment......................................................................................................24

9.7     Waiver..............................................................................................................24

9.8     Severability......................................................................................................24

9.9     Notices.............................................................................................................25

9.10    No Partnership or Agency................................................................................26

9.11    Announcements...............................................................................................26

9.12    Conflict.............................................................................................................26

9.13    Remedies.........................................................................................................26

9.14    No Third-Party Beneficiaries............................................................................26

9.15    Effectiveness; Date..........................................................................................26

**Signature Page**...................................................................................................**27**

**Trademark License Agreement**...........................................................................**29**

## INDEX OF DEFINITIONS

Action Plan................................................11

Affiliate......................................................6

AOR...........................................................6

Approved Locations ...................................7

Change of Control.....................................12

Confidential Information ...........................21

Disclosing Party .......................................21

Excluded Information ................................21

Facilities.....................................................7

Force Majeure Event................................22

Genuine Volvo Part....................................6

New Volvo...................................................6

New Volvo Product.....................................6

Nonparty Claim .........................................19

our..............................................................5

Pre-Owned Volvo.......................................6

Principal Owner.........................................13

Recipient...................................................21

Start Date................................................... 5

Trademark License Agreement ................ 6

us ............................................................... 5

VCC ........................................................... 6

VCC Trademark ........................................ 7

Volvo .......................................................... 6

Volvo Accessory........................................ 6

Volvo Affiliate ............................................ 6

Volvo Operations....................................... 5

Volvo Product............................................ 6

Volvo Trademark....................................... 7

we .............................................................. 5

you ............................................................. 5

your ........................................................... 5

## RETAILER AGREEMENT

This retailer agreement is between Volvo Car USA LLC, a Delaware limited liability company (**us**, **we**, **our**), and the company signing this agreement as the retailer (**you**, **your**).

## ARTICLE 1
## AUTHORIZED RETAILER

**1.1**      **Your Appointment.**

We are Volvo Car Group's national sales company in the United States of America. We are pleased to appoint you as a retailer authorized to sell Volvo Products and service and repair Volvos in accordance with this agreement (those activities, your **Volvo Operations**). By signing this agreement, you accept that appointment.

**1.2**      **Term of This Agreement.**

Your appointment as authorized retailer under this agreement is effective the date stated as the start date in the "Retailer Information" schedule (the **Start Date**) and is for an initial term of five years. Your appointment will automatically renew for successive five-year terms unless at least one year before the end of the initial term or any renewal term we notify you that we do not want to renew.

**1.3**      **Your Potential Customers.**

(a)  You may sell Volvo Products to only these individuals and entities:

| Products | Buyers |
|---|---|
| New Volvos | End users in the United States, including leasing companies and financing companies that take title as security for supplying final customers credit to lease or purchase a Volvo. |
| Pre-Owned Volvos | End users in the United States. |
| Volvo Accessories | End users in the United States. |
| Genuine Volvo Parts | End users or independent repairers in the United States. |

(b)  You will not knowingly sell Volvo Products to anyone for export outside of the United States. You will take reasonable steps (including any we recommend) to verify that people you sell Volvo Products to do not intend to export them.

(c)  In this agreement, these definitions apply:

| | |
|---|---|
| Affiliate | With respect to a company, any other company at the time directly or indirectly controlling, controlled by, or under common control with that company. For this definition, "control" means possession, directly or indirectly, of the power to direct or cause direction of the management and policies of a company, whether through ownership of voting securities, by contract or otherwise. |
| Genuine Volvo Part | A component, replacement, or exchange part (including software), or a new or replacement or exchange engine or other assembled component, supplied by us or a Volvo Affiliate and used to repair, service, or maintain Volvos. |
| New Volvo | A new car manufactured by a Volvo Affiliate, branded "Volvo," and distributed by us in the United States. |
| New Volvo Product | A New Volvo, a Genuine Volvo Part, or a Volvo Accessory. |
| Pre-Owned Volvo | A Volvo previously registered to an end-user. |
| VCC | Volvo Car Corporation, a Swedish corporation. |
| Volvo Accessory | An accessory supplied by us or by a Volvo Affiliate. |
| Volvo Affiliate | VCC or an Affiliate of VCC. |
| Volvo Product | A Volvo, a Genuine Volvo Part, or a Volvo Accessory. |
| Volvo | A New Volvo or Pre-Owned Volvo. |

## 1.4    Your Area of Responsibility.

(a)  You are a nonexclusive authorized Volvo retailer, so you have no exclusive sales area. Instead, we will assign you a nonexclusive area of responsibility (**AOR**) that we will use to help us measure your performance.

(b)  Based on our ongoing assessment of demographic changes, market conditions, and business opportunities, we might on one or more occasions change your AOR, add new retailers in or outside of your AOR, or move existing retailers into your AOR. We will give you at least 60 days' notice of any changes to your AOR and will discuss those changes with you.  Any changes to your AOR will be based upon reasonable considerations.

## 1.5    Trademarks.

Our and your entry into this agreement will also constitute entry by VCC and you into the trademark license agreement between VCC and you attached as an exhibit (**Trademark License Agreement**). In the Trademark License Agreement, VCC grants you a license to use the VCC Trademarks and the Volvo Trademarks.  **VCC**

**Trademark** and **Volvo Trademark** have the meaning given to those terms in the Trademark License Agreement. VCC has authorized us to enter into the Trademark License Agreement on its behalf.

# ARTICLE 2

## YOUR VOLVO OPERATIONS

**2.1**   **The Approved Locations.**

(a)  You will conduct your Volvo Operations only in the locations listed in the "Retailer Information" schedule (**Approved Locations**). You will not display, demonstrate, or sell Volvo Products or service or repair Volvo Products at any other location or relocate your Volvo Operations from the Approved Locations without giving us at least 90 days' prior notice and getting our written consent, which shall not be unreasonably withheld.

(b)  Your buildings and facilities at the Approved Locations (**Facilities**) are also described in the "Facilities" schedule. The Facilities will meet our operating standards. You will make no material change to the internal or external appearance of the Facilities without giving us at least 90 days' prior notice and getting our written consent, which shall not be unreasonably withheld.

**2.2**   **Other Activities at the Approved Locations.**

(a)  Without giving us at least 90 days' prior notice and getting our written consent, you will not sell products or provide services at the Facilities other than as part of your Volvo Operations and other than sale of pre-owned cars that are not Volvos.

(b)  Section 2.2(a) does not apply to you if at the Start Date you are already an authorized Volvo retailer and we have previously consented in writing to you selling other products or providing other services at the Facilities.

**2.3**   **Management.**

(a)  If none of your Principal Owners are involved with your Volvo Operations full time on a day-to-day basis, you will appoint a suitably qualified general manager.  That person will manage your day-to-day Volvo Operations full time, and you will replace each departing general manager as soon as possible.

(b)  Your general manager must be authorized to make decisions on behalf of your Volvo Operations when dealing with us (this shall not include decisions involving material capital expenditure). As soon as possible you will provide us with a commitment letter signed by you confirming that your general manager is so authorized and stating that you will be responsible for any decisions the general manager makes.

(c) You will arrange for each new general manager to be registered in our retailer personnel system.  You state that who currently manages your Volvo Operations is as described in the "Ownership and Management" schedule.

**2.4    Capital and Credit Lines.**

You will maintain a level of net working capital and adequate lines of credit (including floor-planning lines of credit) to allow you to comply with your obligations under this agreement and meet your business objectives.

**2.5    Retailer Management System.**

You will use a retailer management system we approve. You will as soon as possible provide us any business-management information we reasonably request.

**2.6    Customer Data.**

(a) We and you will comply with all laws when collecting, handling, processing, sharing, and using customer data.

(b) If we provide you with Volvo customer data, you will:

(1) use that data only during the term of this agreement and in accordance with our instructions and our operating standards;

(2) keep that data confidential and protect it against unauthorized use, disclosure, loss, destruction, or damage;

(3) keep that data in the United States; and

(4) instruct your personnel in handling that data consistent with your obligations under this section 2.6.

**2.7    Monitoring.**

(a) You will keep complete and accurate records of your Volvo Operations and will maintain those records at the Facilities for as long as required by law, and for not less than four years after the end of the year to which any such record relates.

(b) You will allow us and our agents to inspect the Facilities, including all reasonably necessary records and inventory at the Facilities, during normal business hours to reasonably verify that you are complying with your obligations under this agreement.

## ARTICLE 3

## SALE AND SERVICE OF VOLVO PRODUCTS

**3.1     What You Will Sell.**

(a)  As an authorized Volvo retailer, you will:

(1)  sell New Volvos;

(2)  demonstrate, promote, and sell Pre-Owned Volvos; and

(3)  sell Genuine Volvo Parts and Volvo Accessories.

(b)  As part of your sale of New Volvos, you will:

(1)  buy New Volvos from us;

(2)  demonstrate, promote, and sell the full range of New Volvos;

(3)  maintain sufficient inventory of New Volvos to meet customer demand and your sales objectives;

(4)  follow up all sales leads as soon as possible;

(5)  support our national marketing with your own marketing activities and take part in regional retailer marketing in accordance with the marketing requirements stated in our operating standards; and

(6)  use the point-of-sale materials and sales communications systems we make available to you.

(c)  You will maintain sufficient inventory of Genuine Volvo Parts and Volvo Accessories to meet customer demand and your sales objectives. To help ensure that happens, you will take part in our inventory management programs.

**3.2     Your Fixed Operations.**

(a)  As part of your fixed operations, you will do the following:

| Generally | Service and repair Volvos. |
|---|---|
|  | Carry out warranty, recall, and free factory scheduled maintenance work on Volvos that Customers bring to you, regardless of where the Volvo was first sold, and using only new Genuine Volvo Parts. |
|  | Carry out pre-delivery inspection of New Volvos. |
| Warranty | Comply with our warranty manual. |

| Safety and technical | Notify us immediately if you have a concern regarding the safety or quality of a Volvo Product. |
| | Provide us with feedback from you and from customers regarding service and repair issues. |
| | Follow any instructions we issue retailers to stop selling a specified Volvo Product. |
| | Perform only those repair procedures we recommend. |

(b) You will not use or sell parts (including software) or accessories that infringe our intellectual property rights or those of a Volvo Affiliate or adversely affect a Volvo's performance.

(c) We may audit your payment of warranty claims, charge back to you any warranty payment if in making that payment you failed to comply with the terms of the warranty or the warranty manual, and stop authorizing warranty claims if you do not comply with the warranty manual. We will handle your warranty claims in accordance with our warranty manual.

(d) We will provide you with technical information and assistance regarding Volvo Products.

**3.3    Customer Satisfaction.**

To be a successful retailer, you must have satisfied customers. You will ensure that your personnel are trained as stated in our operating standards. You will take part in our initiatives aimed at improving how our retailers serve customers. You will give the highest priority to resolving customer complaints and questions and addressing any shortcomings in your operations highlighted in customer feedback.

**3.4    New Product Launches.**

You will comply with any reasonable guidelines we issue when launching a new product, will ensure that your personnel take any reasonably recommended training in the new product, and will take part in launch events at your Facilities. If you fail to take any of those steps, we may hold back the new product from you.

**ARTICLE 4**

**YOUR PERFORMANCE**

**4.1    Our Operating Standards.**

You must meet our operating standards and we will make them available and accessible to you. We may occasionally make reasonable changes to our operating standards. If we do, we will notify you and give you a reasonable amount of time to comply with the revised operating standards.

**4.2    Your Objectives.**

We will set reasonable annual business objectives for your sales of Volvo Products and how satisfied your customers are, plus any other objectives we elect to set that are reasonably related to measuring your performance.

**4.3    Improvement Programs.**

(a) If you do not meet your objectives or our operating standards, you will at our request take part in an improvement program to determine what aspects of your performance must improve by when, what changes you need to make, and how we will decide whether your performance has improved.

(b) No later than 30 days after attending an improvement program, you will provide us with a plan showing how you propose to make the changes you need to make and the date by which you propose to do so (**Action Plan**). We will give you at least six months to implement an Action Plan.

**4.4    Your Business Plan.**

Each year you will prepare a business plan for your operations in the coming calendar year. You will provide us with a copy of that business plan in whatever format we request and will discuss with us any comments or questions we have. You will implement each such business plan in running your Volvo Operations.

**4.5    Complying with the Law.**

You will comply with all laws in performing your obligations under this agreement and running your Volvo Operations. You will obtain and maintain all government permits you need to run your Volvo Operations.  We will comply with all laws in performing our obligations under this agreement.

**4.6    Our Code of Conduct.**

The Volvo Car Group has adopted a code of conduct, available at <u>Code of Conduct</u> . Our code of conduct is fundamental to our business and reflects our values and our approach to business ethics. You will conduct your Volvo Operations reasonably

consistent with our code of conduct, and you will make best efforts to make sure that your employees and subcontractors do so too.

## ARTICLE 5

## OWNERSHIP

**5.1**   **Current Ownership.**

You state that who currently owns you is as described in the "Ownership and Management" schedule.

**5.2**   **Change of Ownership.**

(a)   We recognize that at some point you might want to sell your Volvo retailer business, but we would want to make sure that your proposed buyer has the right credentials. So to enter into one or more transactions that would result in a Change of Control of you or any company that owns, directly or indirectly, you or the assets used in your Volvo Operations, you must first get our written consent. You will include in any agreement that would result in any such Change of Control a provision to the effect that the agreement will not be effective unless we consent. You will also disclose to any potential buyer our right of first refusal under this section 5.2.

(b)   In this agreement, **Change of Control** means, with respect to any company, occurrence of the following:

(1)   one or more people that are not shareholders of that company on the date of this agreement acquire, during a period of 12 consecutive months, a majority of the shares or a majority of the voting shares of that company;

(2)   a merger or consolidation of that company with any other company; or

(3)   sale or other disposition by that company of all or substantially all of that company's assets or any transaction having a similar effect.

(c)   You will give us any information we reasonably need to decide whether to consent to a Change of Control and will as soon as possible notify us of non-trivial changes in the terms of the proposed transaction (including a change in timing or the parties involved).

(d)   We will not unreasonably withhold our consent to your proposed transaction. When deciding whether to give our consent, we will consider factors such as the character, finances, and business experience of the one or more proposed new owners (or, if the proposed new owner is a legal entity, the individuals who own and manage the proposed new owner) and what effect the proposed transaction would have on competition.

(e)   Once you have provided us with all of the information we have asked for, we will notify you of that in writing. If you provide us any additional information, we will notify you of that too, and that later notice is the notice that will apply for purposes of section (f).

(f) No later than 60 days after you receive a notice under section (e), we will notify you of our decision, which will take one of the following three forms:

| Decision on proposed change of ownership | Next step |
| --- | --- |
| We approve. | You may go ahead with the proposed transaction, but only if the terms are as described to us. |
| We do not approve. | We will give you our reasons, and you will not go ahead with the proposed transaction. |
| We wish to exercise a right of first refusal to take the place of your proposed buyer. | The process in section (h) will be followed. |

(g) If we do not approve the proposed transaction, that does not mean we must exercise the right of first refusal.

(h) If we exercise the right of first refusal, we and you will consummate a transaction on the same terms as the proposed transaction. You will provide us a copy of all documents relating to the proposed transaction.

(i) We may assign our right of first refusal to anyone.

**5.3   Death or Incapacity.**

(a) If someone who owns directly or indirectly at least 20% of your stock (**Principal Owner**) dies or becomes permanently incapacitated, you will as soon as possible, and in any event within 30 days, notify us of that death or incapacity, whether that Principal Owner's interest will be transferred to anyone and, if so, to whom, and whether that death or incapacity will result in any changes in day-to-day management of your Volvo Operations.

(b) Transfer of a deceased or incapacitated Principal Owner's interest to another person as part of that Principal Owner's estate will not be subject to our rights under section 5.2. But we may terminate this agreement on 30 days' notice if the deceased or incapacitated Principal Owner's interest passes to someone convicted of a crime that (1) is punishable by a custodial penalty (instead of or in addition to a fine or other noncustodial penalty) or (2) is related to that person's business practices.

**ARTICLE 6**

**TERMINATION**

6.1     **Termination by You.**

You may terminate this agreement by giving us at least 60 days' notice.

6.2     **Termination by Us.**

We may terminate this agreement immediately in the following circumstances

| Location and ownership | You breach any of your obligations under section 2.1 or section 5.2. |
|---|---|
| False statements | You provide us with materially inaccurate information about your ownership or management. |
| | You made one or more materially inaccurate statements of fact in applying to become a Volvo retailer. |
| | You or any of your agents or employees make one or more false claims for reimbursement or payment by us. |
| | You use one or more unfair, misleading, deceptive or fraudulent advertising or business practices in marketing, selling, or servicing Volvo Products or in any program offered by us. |
| Illegality | You, any of your Principal Owners, or your General Manager are convicted of a crime that (1) is punishable by a custodial penalty (instead of or in addition to a fine or other noncustodial penalty) or (2) is related to your business practices. |
| | You breach any antitrust laws. |
| Insolvency | You commence a voluntary case under title 11 of the United States Code. |
| | Anyone commences an involuntary case against you under title 11 of the United States Code and either (1) the case is not dismissed by midnight at the end of the 60th day after commencement or (2) the court before which the case is pending issues an order approving the case. |
| | A court appoints, or you make an assignment of all or substantially all your assets to, a custodian (as that term is defined in title 11 of the United States Code) for you or all or substantially all your assets. |
| | You fail to pay your debts as they become due (unless those debts are subject to a good-faith dispute as to liability or amount) or acknowledge in writing that you are unable to do so. |

| Your operations | You do not keep your Volvo Operations open during the usual business hours in your AOR for five consecutive business days. |
| | You do not obtain or maintain any government authorization you need to conduct your Volvo Operations. |
| Nonpayment | You fail to pay any amount you owe us no later than 30 days after it is due. |
| Importing | Without first getting our consent, you import, distribute, or sell New Volvo Products not originally manufactured or designed for use in the United States. |
| Trademarks | The Trademark License Agreement terminates. |

### 6.3    Termination After Correction Period.

(a)  If any of the following events or circumstances occurs and you fail to correct it no later than 60 days after we notify you of it (with that 60-day period applying only if it is possible for you to correct that event or circumstance), we may terminate this agreement by giving you at least 30 days' notice:

   (1)  there is a disagreement among your owners, investors, or managers that in our reasonable opinion affects your ownership, operations, management, or business;

   (2)  we reasonably determine that your general manager is not qualified to act as such or has acted against your or our interests;

   (3)  you, your owners, or your managers do something intentionally that significantly harms our reputation or the reputation of Volvo Products;

   (4)  you breach any other agreement you have with us or any Volvo Affiliate; and

   (5)  you breach any other material term of this agreement, including these sections:

| Section Heading | |
| --- | --- |
| 2.1(b) | The Approved Locations. |
| 2.2(a) | Other Activities at the Approved Locations. |
| 2.4 | Capital and Credit Lines. |
| 3.1(b)(3) | What You Will Sell. |
| 3.1(c) | What You Will Sell. |
| 3.2(a) | Your Fixed Operations. |
| 4.4 | Your Business Plan. |
| 4.5 | Complying with the Law. |
| 4.6 | Our Code of Conduct. |

**6.4     Termination for Unsatisfactory Performance.**

We may terminate this agreement by giving you at least 90 days' notice if any of the following occurs:

(a)  you unreasonably refuse our request that you join an improvement program;

(b)  you unreasonably refuse our request that you put in place an Action Plan; and

(c)  you comply with our request that you put in place an Action Plan but you fail to take steps we have reasonably requested to address noncompliance or you fail to meet the objectives by the time specified.

**6.5     What Happens on Termination.**

If this agreement is terminated  the following will apply:

| | |
|---|---|
| Your status | You will no longer be an authorized Volvo retailer and will do nothing that suggests otherwise. |
| Trademarks | You will comply with section 10 of the Trademark License Agreement and remove all signs, displays, and other items bearing a VCC Trademark or a Volvo Trademark. |
| Orders | You will transfer to us (or someone we nominate) all of the following materials relating to your Volvo Operations:<br>1  open orders for sale of Volvo Products and all deposits, whether in cash or in kind;<br>2  all documentation, whether printed or electronic, regarding warranty claims on New Volvo Products;<br>3  all customer service records;<br>4  all printed technical, sales, and service manuals and other materials; and<br>5  all printed advertising materials. |
| Customers | We may inform your existing and prospective customers of your termination as an authorized Volvo retailer and alternative arrangements for sale of Volvo Products and service and repair of Volvos. |
| Warranty claims | To be reimbursed for outstanding warranty claims, you must submit them for processing no later than 30 days after termination. |

**ARTICLE 7**

**TERMS OF SALE**

**7.1    Unilateral Amendment.**

We may occasionally change the terms of this Article 7 to reflect changes in our trading terms. We will give you reasonable notice if we do so. This agreement will be deemed amended to reflect any such changes.

**7.2    Price and Payment Terms.**

(a)  Our prices include delivery costs and insurance but exclude all other expenses and taxes, which you are responsible for. We may adjust our prices. We will notify you of our terms for your paying for Volvo Products.

(b)  We may assign to anyone our right to be paid by you for any order you placed for New Volvo Products and our interest in that order, those New Volvo Products, proceeds of sale of those New Volvo Products, and the benefit of all guarantees, security interests, and insurance relating to those New Volvo Products.

(c)  You will pay us all amounts due under this agreement, with no setoff, counterclaim, deduction, or withholding other than any deduction or withholding of tax required by law.

(d)  We or any Volvo Affiliate may set off any money you owe us, unless the subject of a good faith dispute, against any money we owe you and may apply any money we owe you to reduce your stocking-finance debt.

**7.3    Supply.**

We will try hard to supply you with Volvo Products in the quantities and types you need to meet your objectives as reflected in your business plan, subject to our policy for allocating Volvo Products among our retailers.

**7.4    Availability.**

We may change or discontinue any Volvo Product whenever we think it appropriate.

**7.5    Invoicing.**

We will invoice you for the full price of the following Volvo Products on the following date:

(a)  for each New Volvo ordered by you, the date when the decision is made that it is to be transported from a US port to you; and

(b)  for each Genuine Volvo Part or Volvo Accessory ordered by you, the date when it is shipped from our distribution center.

**7.6     Ownership.**

Title in a New Volvo Product will pass from us to you on its invoice date.

**7.7     Risk.**

Risk of loss or damage to New Volvo Products will pass from us to you on invoice date.

**7.8     Insurance.**

We will arrange for each New Volvo Product to be insured from the date on which risk of loss or damage passes from us to you until the New Volvo Product is delivered to you. The cost of this insurance will be included in the delivery fees.

**7.9     Delivery.**

(a)  We will deliver New Volvo Products in accordance with our published delivery conditions. We may amend them as we think appropriate. Volvo Products will be deemed delivered to you when they are unloaded at the Approved Locations.

(b)  Delivery dates requested by you or agreed upon by us and you are estimates. You acknowledge that deliveries made earlier or later than estimated dates will not constitute breach of this agreement.

**7.10    Examination.**

You will examine New Volvo Products upon delivery at the Approved Locations and tell us as soon as possible if any of them has been damaged.

**7.11    Customer Warranties.**

(a)  We will notify you of warranty terms for New Volvo Products. To the extent permitted by law, our liability is limited to that stated in our warranty terms. In accordance with the warranty manual, all customers (whether buyers of New Volvos or Pre-Owned Volvos) get the benefit of our warranties.

(b)  You may not create any additional warranties on behalf of us or any Volvo Affiliate. If you do, you will be solely responsible for any resulting liabilities.

**7.12    Product Liability.**

(a)  We will indemnify you against any amount awarded in, or paid in settlement of, any proceeding relating to damage to property, death, or personal injury arising from any defect in materials or workmanship of Volvo Products (each such proceeding, a **Nonparty Claim**) and all reasonable out-of-pocket expenses incurred in defending that Nonparty Claim or in any related investigation or negotiation, including court filing fees, court costs, arbitration fees, witness fees, and legal fees

and disbursements, except to the extent negligently or intentionally caused by you or one or more of your employees, agents, or other representatives.

(b)   To be entitled to indemnification under section 7.12(a) with respect to a Nonparty Claim, you must as soon as possible (and in any event no later than ten days after you first knew of that Nonparty Claim) notify us of that Nonparty Claim and deliver to us a copy of all legal pleadings in that Nonparty Claim.

(c)   We may assume the defense of a Nonparty Claim by notifying you that we are doing so. Once we do so, you may not contest, pay, or settle that Nonparty Claim without our prior written consent.

**7.13   Insurance.**

You will take out and maintain insurance reasonably acceptable to us.

**ARTICLE 8**

**DISPUTES**

**8.1     Mediation.**

(a)  We always prefer to try to resolve disputes quickly and amicably. We will consider mediating any dispute before starting any legal action in court, and we ask you to do likewise.

(b)  If we and you agree to a formal mediation process, neither we nor you will initiate any formal legal proceedings during the mediation process, and the running of any statute of limitations that applies to the claims being mediated will be delayed during the mediation process.

**8.2     Governing Law.**

New Jersey law governs all adversarial proceedings arising out of this agreement, your Volvo Operations, or disclosure or use of Confidential Information, except that Swedish law governs all adversarial proceedings arising out of the Trademark License Agreement.

**8.3     Jurisdiction.**

(a)  If either party brings against the other party any proceeding arising out of this agreement, your Volvo Operations, or disclosure or use of Confidential Information, that party may bring that proceeding only in the United States District Court for the District of New Jersey or in any state court of New Jersey, and each party submits to the exclusive jurisdiction of those courts for any such proceeding. If either party brings against the other party any proceeding arising out of the Trademark License Agreement, that party may bring that proceeding only in Swedish courts, and each party submits to the exclusive jurisdiction of those courts for any such proceeding.

(b)  Each party waives any claim that any proceeding brought under section 8.3(a) has been brought in an inconvenient forum or that the venue of that proceeding is improper.

## ARTICLE 9

## MISCELLANEOUS

**9.1    State Law.**

If anything in this agreement conflicts with the laws of the state where your Volvo Operations are located, those state laws will prevail.

**9.2    Confidentiality.**

(a)  During the term of this agreement and for three years thereafter, we and you will not (1) disclose Confidential Information except as contemplated in this agreement or (2) use Confidential Information other than for purposes of contemplated by this agreement.

(b)  In this agreement, these definitions apply:

| Confidential Information | Information falling in either of these categories: <br> 1  information (other than Excluded Information) that we disclose to you relating to us and our business during the term of this agreement and information you disclose to us about you and your business during the term of this agreement; and <br> 2  information (including notes, analyses, compilations, and summaries) that is in writing or embodied in an electronic medium and that the Recipient or any of the Recipient's representatives derive, in whole or in part, from any information described in clause (1) of this definition. |
|---|---|
| Disclosing Party | Whichever of we and you discloses information under this agreement. |
| Excluded Information | Information falling in any of these categories: <br> 1  other than personally identifiable information, information that is or becomes public other than as a result of breach of any obligation under this agreement; <br> 2  information that, when disclosed, is already in the possession of the Recipient as the result of disclosure by a person that was not then under an obligation to the Disclosing Party to keep that information confidential; and <br> 3  information that, after it is disclosed under this agreement, is disclosed to the Recipient by a Person that was not then under an obligation to the Disclosing Party to keep that information confidential. |
| Recipient | Whichever of we and you receives information under this agreement. |

(c) Any individual to whom the Recipient discloses Confidential Information in accordance with this agreement may disclose that Confidential Information only to any representatives of the Recipient who require that Confidential Information in connection with complying with obligations under this agreement or applicable state law, on condition that before Confidential Information is disclosed to any individual in accordance with this section 9.1 the Recipient notifies that individual of the confidential nature of the Confidential Information.

(d) If this agreement terminates or you or we give notice of termination, that information will not be Confidential Information.

(e) It will not constitute a breach of the Recipient's obligations under this agreement for the Recipient or any of its representatives to disclose Confidential Information as required by law.

**9.3**   **Force Majeure.**

(a) If a Force Majeure Event prevents we or you from complying with any one or more obligations under this agreement, that inability to comply will not constitute breach if (1) that party uses reasonable efforts to perform those obligations, (2) that party's inability to perform those obligations is not due to its failure to (A) take reasonable measures to protect itself against events or circumstances of the same type as that Force Majeure Event or (B) develop and maintain a reasonable contingency plan to respond to events or circumstances of the same type as that Force Majeure Event, and (3) that party complies with its obligations under section (c).

(b) In this agreement, **Force Majeure Event** means, with respect to we or you, any event or circumstance, whether or not foreseeable, that was not caused by that party (other than a strike or other labor unrest that affects only that party, an increase in prices or other change in general economic conditions, a change in law, or an event or circumstance that results in that party's not having sufficient funds to comply with an obligation to pay money) and any consequences of that event or circumstance.

(c) If a Force Majeure Event occurs, the noncomplying party will as soon as possible notify the other party of occurrence of that Force Majeure Event, its effect on performance, and how long the noncomplying party expects it to last. Thereafter the noncomplying party will update that information as reasonably necessary. During a Force Majeure Event, the noncomplying party will use reasonable efforts to limit damages to the other party and to resume its performance under this agreement.

(d) If a Force Majeure Event prevents the noncomplying party from complying with its obligations for a continuous period of more than 90 days, the other party may terminate this agreement by giving at least 90 days' notice to the noncomplying party.

**9.4     Entire Agreement.**

This agreement and the "Retailer Information," "Facilities," and "Ownership and Management" schedules that you submit to us on signing this agreement constitute the entire understanding between we and you as to the subject of this agreement and supersede all other agreements, whether written or oral, between we and you.

**9.5     Amendment.**

Except as provided in section 7.1, no amendment to this agreement or any schedule constituting part of this agreement will be effective unless it is in writing and signed by both parties.

**9.6     Assignment.**

Subject to our right of first refusal under section 5.2, neither we nor you may assign any rights or delegate any obligations under this agreement without the prior written consent of the other party, except that we may assign our rights or delegate our obligations under this agreement to any Volvo Affiliate. Any purported assignment or delegation in breach of this section 9.6 will be void.

**9.7     Waiver.**

No failure or delay by either us or you to exercise any right or remedy under this agreement or by law will be a waiver of that or any other right or remedy, nor will it prevent or restrict the further exercise of that or any other right or remedy. No single or partial exercise of that right or remedy will prevent or restrict the further exercise of that or any other right or remedy.

**9.8     Severability.**

We and you intend that:

(a)  if any provision of this agreement is held to be unenforceable, then that provision will be modified to the minimum extent necessary to make it enforceable, unless that modification is not permitted by law, in which case that provision will be disregarded;

(b)  if modifying or disregarding the unenforceable provision would result in failure of an essential purpose of this agreement, the entire agreement will be held unenforceable;

(c)  if an unenforceable provision is modified or disregarded in accordance with this section 9.8, then the rest of the agreement will remain in effect as written; and

(d)  any unenforceable provision will remain as written in any circumstances other than those in which the provision is held to be unenforceable.

**9.9** **Notices.**

(a) For a notice or other communication in accordance with this agreement to be valid, it must be in writing and delivered (1) by hand, (2) by a national transportation company (with all fees prepaid), or (3) by email.

(b) Subject to section 9.9(a), a valid notice or other communication in accordance with this agreement will be effective when received by the party to which it is addressed, with any such notice or other communication sent to any nonparty specified in section (c) as a party's co-addressee constituting a courtesy copy that is not to be considered when determining when that party received that notice. It will be deemed to have been received if:

(1) it is delivered by hand or delivered by a national transportation company, with all fees prepaid, upon receipt as indicated by the date on the signed receipt;

(2) it is delivered by email, when the party to which the email is addressed, by notice in accordance with this section 9.9 (but with no need for further acknowledgment), acknowledges having received that email, with an automatic "read receipt" not constituting acknowledgment of an email for this section 9.9; and

(3) the party to which it is addressed rejects or otherwise refuses to accept it, or if it cannot be delivered because of a change in address for which no notice was given, then upon that rejection, refusal, or inability to deliver.

(c) For a notice or other communication to a party under this agreement to be valid, it must be addressed using the information specified below for that party or any other information specified by that party in a notice in accordance with this section 9.9.

| To us | Head of Legal<br>Volvo Car USA LLC<br>1 Volvo Drive<br>Rockleigh<br>NJ, 07647<br>USA |
|---|---|
| With a copy to | The Regional Vice President for your region. |
| To you | As stated in the "Retailer Information" schedule. |

(d) If a notice or other communication addressed to a party is received after 5:00 p.m. on a business day at the location specified in the address for that party, or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the next business day.

**9.10**    **No Partnership or Agency.**

This agreement does not establish or create a partnership or joint venture between us and you or allow either us or you to enter legally binding commitments on the other's behalf.

**9.11**    **Announcements.**

Unless required by law, neither we nor you will make an announcement about this agreement without getting the other party's consent first.

**9.12**    **Conflict.**

If there is an inconsistency between this agreement and the Trademark License Agreement, the Trademark License Agreement will prevail.

**9.13**    **Remedies.**

No remedy available to a party under this agreement will exclude other remedies available by law.

**9.14**    **No Third-Party Beneficiaries.**

This agreement is for your and our benefit. It is not for the benefit of any other person.

**9.15**    **Effectiveness; Date.**

This agreement will become effective when both parties have signed it. The date this agreement is signed by the second party to sign it will be deemed the date of this agreement.

**SIGNATURE PAGE**

**Volvo Car USA LLC**

| By (please type your first and last name): | Adam Clarke |
|---|---|
| Its (please type your title): | Vice President Network |
| Signed electronically on | December 05, 2017 |
| ☒ checking this box constitutes a legal signature on behalf of Volvo Car USA LLC. | |

**Retailer**

| By (please type your first and last name): | JOSEPH LAHAM |
|---|---|
| Its (please type your title): | PRESIDENT |
| Signed electronically on | Monday, December 04, 2017 |
| ☒ checking this box constitutes a legal signature on behalf of the Retailer. | |

**EXHIBIT**
**TRADEMARK LICENSE AGREEMENT**

**TRADEMARK LICENSE AGREEMENT**

This license is entered between (1) Volvo Car Corporation (registration no. 556074-3089), a Swedish corporation, having its registered address at SE-405 31 Gothenburg, Sweden (**us, we, our**) and (2) the company signing the Retailer Agreement as the retailer (**you, your**).

**Background.**

(A)  By a license agreement entered into between Volvo Trademark Holding AB (**VTH**) and us dated 28 February 1999 (**VCC License**), we are licensed to use certain trademarks, devices and names including the word VOLVO and trademark registrations and applications for registration including those set out in **Appendix A (part 1)** in respect of certain goods and services.

(B)  We are also the owner of certain trademarks, devices and names set out in **Appendix A (part 2)**.

(C)  You have been appointed as an Authorized Volvo Retailer under a retailer agreement. We agree that you are authorized to use the trademarks set out in **Appendix A** in the Territory on the following terms and conditions.

**Our Agreement.**

**1      Definitions and interpretation.**

| Authorized Services | The sale, marketing, and repairer service of vehicles and finance services, all to the extent provided in connection with vehicles marketed by us. |
|---|---|
| Retailer Agreement | The agreement between you and Volvo Car USA LLC. |
| Start Date | The date you sign the Retailer Agreement. |
| Territory | The United States of America. |
| Trademarks | The VCC Trademarks and the Volvo Trademarks. |
| VCC Trademarks | The trademarks, trademark registrations and applications for registration set out in Appendix A (part 1). |
| Volvo Trademarks | The trademarks, trademark registrations and applications for registration set out in Appendix A (part 2). |

**2      Grant of authorization.**

**2.1**   We grant you, for the term as stated in section 10.1 below and subject to the terms and conditions of this license a nonexclusive sublicense to use the Volvo Trademarks and a nonexclusive license to use the VCC Trademarks in relation to the Authorized Services in the Territory.

**2.2** You will not assign, transfer or sublicense your rights to use the Trademarks, and will not assign, transfer or sublicense any of its obligations under this License, whether by operation of law or otherwise.

**3    Name.**

**3.1** No use of any name including the word 'Volvo' as a business name, corporate name, trading name, or domain name by you is licensed by this license.

**3.2** You may use `Volvo Cars´ in your trading name and/or in a domain name owned by us for identification of your dealership but only if you get our written approval first. Further such use is subject to and must be in accordance with any retailer and/or domain naming policy and brand usage guidelines issued occasionally by us and as otherwise instructed by us.

**4    Promotional literature.**

You will use the Trademarks in connection with the Authorized Services (including use in advertising or promotional material, on invoices, forms or other documents and materials supplied with the Authorized Services and related packaging) in accordance with any trademark usage guidelines issued occasionally by us and as otherwise instructed by us.

**5    Your obligations.**

**5.1** You will:

(a) not acquire, by registration or otherwise, any trade mark in any country which comprises or includes the word 'Volvo' or any of the Trademarks or any confusingly similar word or device;

(b) not use the Trademarks upon or in relation to any goods or services other than the Authorized Services, and not to authorize anyone else to do so;

(c) not use in connection with the Authorized Services any other trade mark that so nearly resembles the Trademarks as to be likely to cause deception or confusion;

(d) not use or register any corporate, trading, business or domain name which comprises or includes the word 'Volvo' or a Trademark, except for use of a trading name or a domain name approved in accordance with Section 3.2 above;

(e) provide us with the information as set out in **Appendix B** in the form and to the identified addressees set out in **Appendix B** or as amended from time by us and any such further information as we may reasonably require regarding the use of the Trademarks; and

(f) not grant any sub-licenses or authorities to any third parties to use any Trademark.

**6    Quality control.**

We have been involved in development of the quality standards in the Retailer Agreement for your provision of Authorized Services, and we endorse those standards. This license is subject to your fulfilment of the Retailer Agreement in relation to those standards, and in all cases in accordance with sound commercial practices and in accordance with all government regulatory standards in the Territory.

**7    Infringement.**

**7.1**   You will promptly give written notice to us if you learn of any:

(a)   infringement or suspected infringement or misuse of the Trademarks or passing off or unfair competition by any third-party; or

(b)   claim that the use of the Trademarks by us or you, or any of our other licensees or sub-licensees infringes the rights of any third person and you will not make any admissions in respect of such matters other than to us you will provide us with all information in your possession relating to the claim which we may reasonably require.

**7.2**   You will indemnify and hold us and our subsidiaries and affiliated companies harmless against all costs and expenses (including legal and other professional costs, fees and expenses) actions, proceedings, claims, demands, damages and losses arising from or connected with any breach by you of your obligations under this license, or arising from or connected with the provision of Authorized Services by you.

**7.3**   You may not bring any action or proceedings relating to the Trademarks without first getting our written consent and we will not be obliged to bring or extend any proceedings relating to the Trademarks if we decide not to. You will give us all reasonable help if we decide to take action.

**7.4**   You agree that we, VTH and their subsidiaries and affiliated companies provide no warranty that the Trademarks can be used in the Territory without claims of infringement by third parties.

**8    Title to trademarks.**

**8.1**   You will not acquire or claim any title in the Trademarks due to the rights granted under this license or through your use of the Trademarks, it being the intention of the parties that all use of the Volvo Trademarks by you will inure to Volvo Trademark Holding AB and all use of the VCC Trademarks by you will inure to the benefit of us. If we request, you will consent to the registration in any country and for any goods and/or services of the Volvo Trademarks by VTH and the VCC Trademarks by us.

**9    Recording license / sublicense.**

**9.1**   You will, if we ask you to, join with us in applying at our expense for the recordal of you as sub-licensee of the Volvo Trademarks and licensee of the VCC Trademarks in the Territory

and where such recordal is deemed appropriate by us, you will take all steps necessary towards that end.

**10   Termination.**

**10.1**  This license takes effect on the Start Date. It will unconditionally terminate automatically, without the need for a prior termination or a court intervention, on the date of expiry or termination of the Retailer Agreement (irrespective of the reasons for that agreement terminating).

**10.2**  We may also terminate this license with 3 months' notice if you breach any of the terms and conditions of this license and fail, after receiving written notice from us of such breach, to remedy the breach within 30 days.

**10.3**  We may terminate this license immediately if:

(a)   you become insolvent or subject to any insolvency proceeding, bankruptcy proceeding or assignment for the benefit of creditors;

(b)   you are nationalized by any government or the control of you is transferred to any government or agency thereof; or

(c)   we cease to be a licensee of the Volvo Trademarks.

**10.4**  If you are engaged in repeated acts of default that are remedied upon written notice by us, we may give you notice that there will be no remedy period permitted for future acts of default, in which case we terminate the license with immediate effect.

**11   Consequences of termination.**

**11.1**  On termination of this license, you will:

(a)   immediately stop using the Trademarks and any trading names and/or domain names including "Volvo Cars" and will consent to cancellation of any entry of you as sub-licensee of the Volvo Trademarks and licensee of the VCC Trademarks and will execute any document necessary for that purpose; and

(b)   not use or seek to register any trademark, trade name, corporate name, business name, or domain name identical with or containing any of the Trademarks, or so nearly resembling a Trademark as to be likely to cause confusion or deception.

**12   Notices.**

**12.1**  All notices and other communications under this license will be in writing and will be deemed to have been duly given:

(a)   if delivered by messenger during normal business hours of the recipient, or

(b)   if transmitted by facsimile transmission during normal business hours of the recipient, or

(c)   on the third business day following mailing, if mailed by certified or registered mail,

in each case addressed as provided in **Appendix B.**

**13**   **Governing law and jurisdiction.**

**13.1**   This license will be governed by and construed in accordance with the laws of the Kingdom of Sweden, without regard to the conflicts of law rules of such jurisdiction, which would result in the application of another law other than that of the Kingdom of Sweden.

**14**   **Miscellaneous.**

**14.1**   This license**,** including each Appendix**,** contains the entire agreement of the parties with respect to the matters in this license. From the Start Date, this License supersedes all prior letters, representations or warranties and agreements between us (or any of its affiliates) and you with respect to the subject matter of this license.

**14.2**   This license may only be amended by a writing signed by both us and you.

**14.3**   Waiver by us of any breach of this license will be ineffective and will not be a waiver of any other breach, unless in writing signed by us.

**14.4**   If any non-material provision of this license, as determined by us, is held to be invalid, illegal or unenforceable , then this license will continue in full force and effect except for such provisions which will be deemed excised therefrom. If this occurs, the parties will use their best efforts to agree upon substitute provisions which, while valid, will achieve as closely as possible the same economic effects as the invalid provision. If a material provision of this license, as determined by us in our sole discretion, is held to be invalid, illegal or unenforceable and cannot be modified to our satisfaction, this license may be terminated at our option.

**14.5**   Termination or expiration of this license will not release either party from any obligation which at the time had already accrued to a party nor affect in any way the survival of any other right, duty or obligation of either party expressly provided in this license to survive such termination.

**APPENDIX A**

**Part 1 - The VOLVO Trademarks.**

VOLVO

VOLVO stylized letters



**Part 2 - The VCC Trademarks.**

S60, V60, XC60, C70, V70, XC70, S80, XC90, future Volvo Cars vehicle brands and any additional VCC Trademarks which Volvo Cars may authorize from time to time.

**APPENDIX B**

**Questions in relation to Section 4 of this license agreement should be directed to:**

Volvo Car Corporation
Attn: Senior Manager Brand Management
Dept. 52000, PVH 66
SE-405 31 Gothenburg
Sweden
Telefax: +46-31-597930


**All infringements and allegations thereof and conflicts with third parties relating to the Volvo Trademarks and VCC Trademarks should be notified, under Section 7.1 of this Exhibit A, to:**

Volvo Car Corporation
Attn: Chief Intellectual Property Counsel
Dept. 50094
SE-405 31 Gothenburg
Sweden
Email: iptm@volvocars.com


**All other notices to us should be notified to:**

Volvo Car Corporation
Attn: Chief Intellectual Property Counsel
Dept. 50094,
SE-405 31 Gothenburg
Sweden
Email: iptm@volvocars.com

with a copy to:
Volvo Car Corporation
Attn: General Counsel
Dept. 50090, HB3S
SE-405 31 Gothenburg
Sweden
Telefax: +46-31 59 63 50

**All notices to you** should be notified to in accordance with the Retailer Agreement.

## Retailer Information Record



Volvo Cars Plymouth
500 Colony Place
Plymouth, MA 2360
Start Date: 10/16/2017

### APPROVED LOCATION ADDRESS

**Main Address:** 500 Colony Place

City: Plymouth

State: MA

Zip: 02360

Country: USA

Phone: 508--815-5400

Fax: 508-568-9370

Website:

Email: paula@drivepremier.com

**Mailing Address:** 500 Yarmouth Road

City: Hyannis

State: MA

Zip: 02601

**Pre-Owned Vehicles:** 500 Colony Place

City: Plymouth

State: MA

Zip: 02360

Phone: 508--815-5400

Fax : 508-568-9370

**Parts Dept.:** 500 Colony Place

City: Plymouth

State: MA

Zip: 02360

Phone: 508--815-5400

Fax: 508-568-9370

**Service Dept:** 500 Colony Place

City: Plymouth

State: MA

Zip: 02360

Phone: 508--815-5400

Fax : 508-568-9370

### FACILITY

Owner: 500 Old Colony LLC

Lease Dates: From:

To:

Option Term: 10 year; 1 five year option

Annual Rent: $480,000.00

### FRANCHISE INFORMATION

Franchise Type: Exclusive

Please List Other Makes:

In Showroom:

In Parts:

In Service:

In Other Market Areas:

On Financial Stmt:

### LEAD MANAGEMENT INFORMATION

Tool Name: Contact Management R&R

Tool Email Address:

Tool URL:

Quote Request URL:

☑ I understand that checking this box constitutes a legal signature on behalf of the Retailer

| Signature: JOSEPH LAHAM | Date: 12/04/2017 |
|---|---|
| Title: PRESIDENT | |

## Statement of Ownership

Volvo Cars Plymouth
500 Colony Place
Plymouth, MA 2360
Start Date: 10/16/2017



Incorporated on: 01/17/2017          Company Type:  S Corp

in the State of:  MA

| Names of Owner | Owner Type | Owner - ship% | Interest Acquired On | No. of shares | Share Type | Voting Rights | % of Invest | Value | Valued on | Source of Valuation |
|---|---|---|---|---|---|---|---|---|---|---|
| **Level: 1 Entity: Volvo Cars Plymouth** | | | | | | | | | | |
| Joseph Laham | Trustee(s) | 100.00% | 01/17/2017 | 275 | Preferred | N | 100.00% | | | |
| | | **100.00%** | | | | | **100.00%** | **$0** | | |

### Total Shares by Class

Class A (Voting):

Class B (Non-voting):

Other:

The undersigned hereby certifies that the above information is a true, accurate, and documented representation of ownership as of 12/4/7017.No addition changes in ownership will occur without the prior written approval of Volvo Car USA, LLC which will not be unreasonably withheld or delayed.

☑ I understand that checking this box constitutes a legal signature on behalf of the Retailer

| Retailer Principal Signature: JOSEPH LAHAM | Date: 12/04/2017 |
|---|---|
| Retailer DBA Name: Volvo Cars Plymouth | |

# Facility Detail



Volvo Cars Plymouth
500 Colony Place
Plymouth, MA 2360
Start Date: 10/16/2017

Sales Classification: A(1-149)                    Service Classification: C(<2500)

Retailer intends to dedicate the property and facilities to the Volvo Car operations as detailed below, and on the attached site plan (if applicable). Retailer understands that VCUSA is acting in full faith and reliance upon the representations made by retailer. Retailer further understands and acknowledges that any material change to the facilities affecting the information provided in this schedule, including, without limitation, any change in the purpose, use, layout and/or location provided in this schedule must first be reviewed and approved in writing by VCUSA. Approval of any change may require that the Retailer Agreement be updated or amended accordingly.

## Sales Facility Detail

| Facility Description | Measurement | Requirement | Brand Facilty | Other Brand Facility | Total |
|---|---|---|---|---|---|
| Total Sales Department | Sq Feet | 1,400 | 5,300 | 0 | 5,300 |
| Total Customer Area | Sq Feet | 750 | 1,300 | 0 | 1,300 |
| Total Administration Area | Sq Feet | 700 | 1,054 | 0 | 1,054 |
| Total Parking | Units | 69 | 329 | 0 | 329 |
| Total Land Area | Sq Feet | 19,800 | 197,804 | 0 | 197,804 |
| Total Building | Sq Feet | 7,950 | 28,595 | 0 | 28,595 |
| Total Land and Building Sqft | Sq Feet | 27,750 | 220,123 | 0 | 220,123 |
| Total Land and Building Acres | Acres | 0.6 | 5.00 | 0.00 | 5.00 |

## Service Facility Detail

| Facility Description | Measurement | Requirement | Brand Facilty | Other Brand Facility | Total |
|---|---|---|---|---|---|
| Total Service Area | Sq Feet | 3,950 | 7,250 | 0 | 7,250 |
| Total Parts Department | Sq Feet | 1,150 | 1,400 | 0 | 1,400 |

☑ I understand that checking this box constitutes a legal signature on behalf of the Retailer

| Signature: JOSEPH LAHAM | Date: 12/04/2017 |
|---|---|
| Title: PRESIDENT | |

## Management Schedule



Volvo Cars Plymouth
500 Colony Place
Plymouth, MA 2360
Start Date: 10/16/2017

### Active Management

|  | First Name | Last Name | % of Time Spent in Activity |
|---|---|---|---|
| Retailer Principal | Joseph | Laham | 100% |
| General Manager | John | Lendvai | 100% |
| Service Manager | Josh | Carvalho | 100% |
| Sales Manager |  |  |  |
| Parts Manager | Ron | Robitaille | 100% |
| Office Manager | Darlen | DeCosta | 100% |
| F&I Manager | Laurie | Martin | 100% |

☑ I understand that checking this box constitutes a legal signature on behalf of the Retailer

Signature: JOSEPH LAHAM                    Date: 12/04/2017
Title: PRESIDENT
[If the applicant is a legal entity, an authorized officer must sign]