# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| COLONY PLACE SOUTH, INC. d/b/a VOL VO CARS PLYMOUTH and 25 FALMOUTH ROAD, INC. d/b/a VOLVO CARS CAPE COD ) ) ) )<br><br>Plaintiff, )<br> )<br>vs. )<br> )<br>VOLVO CAR USA LLC, FIDELITY WARRANTY SERVICES, INC., VOLVO CAR FINANCIAL SERVICES U.S., LLC ) ) ) ) )<br><br>Defendants. ) | CASE NO. 1:21-CV-11226-GAO |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

Pursuant to Fed. R. Civ. P. 56, the Defendants, Volvo Car USA, LLC, Volvo Car Financial Services U.S., LLC, and Fidelity Warranty Services, Inc. (collectively "Defendants"), move for summary judgment on all claims asserted in the Plaintiffs' First Amended Complaint ("Complaint") on the grounds that the plaintiffs have no reasonable expectation of offering at trial sufficient evidence to support necessary elements of each of their claims (Counts I-VI) brought pursuant to M.G.L. c. 93B ("Chapter 93B").  Plaintiffs, Colony Place South, Inc. d/b/a Volvo Cars Plymouth and 25 Falmouth Road, Inc. d/b/a Volvo Cars Cape Cod ("Dealers") cannot support claims pursuant to Chapter 93B as a matter of law against Volvo Car Financial Services U.S., LLC ("Volvo Financial") and Fidelity Warranty Services, Inc. ("FWS") because those parties are not "manufacturers or distributors" to whom the law applies.  Moreover, the Dealers' claims fail to allege any conduct that falls within the scope of Chapter 93B §§ 4, 9.  The claims relate solely to reimbursement for vehicle maintenance services that are governed by their contract with FWS, and not any warranty services for the distributor, Volvo Car USA, LLC ("Volvo Car USA"), as required by the relevant provisions of Chapter 93B.

In order to recover in this action, the Dealers seek an unprecedented expansion of the scope of Chapter 93B and ask this Court to favorably rewrite the terms of a contract they executed.  The Dealers proceed on a novel theory that – in spite of the plain terms of Chapter 93B – liability should be extended to entities and to conduct to which it was never intended to apply.  In doing so, the claims asserted also require this Court to interfere with the right of parties to contract, and improperly alter the terms of an agreement between the Dealers and FWS.  These attempts should be rejected.

Defendants hereby submit this Memorandum of Law in Support of their Motion for Summary Judgment.  As set forth below, there are no genuine issues of material fact, and summary judgment should enter as to all of the claims.

## II.   FACTS RELEVANT TO THE MOTION

### A. The Parties

The Dealers are independent authorized Volvo retailers located in Hyannis, Massachusetts. *See* L.R. 56.1 Statement of Undisputed Materials Facts ("SMF"), ¶ 1.  Defendant Volvo Car USA is an authorized distributor of Volvo motor vehicles.  *Id*., ¶ 2.  The Dealers and Volvo Car USA entered into Retailer Agreements that govern the operations related to the sale of Volvo motor vehicles, including the provision of repair or maintenance services pursuant to a warranty.  *Id.*, ¶ 3.

Defendant Volvo Financial is a corporate affiliate of Volvo Car USA.  *Id.*, ¶ 4.  Volvo Financial provides financial services to Volvo consumers and retailers.  *Id.*  Volvo Financial is not a manufacturer or distributor of motor vehicles.  *Id.*

Defendant FWS is an independent corporation that develops, offers, and administers Finance & Insurance ("F&I") Products associated with motor vehicles and sold through a network of dealers.  *Id.*, ¶ 5.  FWS is not a manufacturer or distributor of motor vehicles.  *Id.*  FWS entered into a Master Services Agreement with Volvo Financial through which FWS designs, administers, and offers a number of different F&I Products, including the Volvo Pre-Paid Maintenance Plan ("PPM").[1]  *Id.*, ¶ 6.  Under the Master Services Agreement, FWS agreed to pay a referral fee to Volvo Financial for each PPM contract sold to a customer through the dealer network.  *Id.*  FWS

---

[1] FWS develops both branded and non-branded F&I products for sale by dealers to consumers. A "branded product" is a term that means that it is associated with a brand name, like the Volvo PPM.  *Id.*, ¶ 7.

does not have a contractual relationship with Volvo Car USA concerning the F&I products that it develops and offers to retailers, including the PPM.  *Id*.

**B.  The Administrative Agreement between Dealers and FWS**

On June 2, 2018, the Dealers and FWS entered into an Administrative Agreement ("the F&I Agreement.").[2]  *Id.*, ¶ 8.  The F&I Agreement concerns the sale and administration of motor vehicle F&I Products, including the PPM.  *See generally*, SMF Ex. 4.

1.  The Contracting Parties

The parties to the F&I Agreement are the Dealers and "FWS and/or its affiliated companies that comprise the JM&A Group."  *Id.*, at Premier_000168.[3]  Volvo Car USA and Volvo Financial are not parties to the F&I Agreement.  SMF ¶ 9.

2.  Purpose of the F&I Agreement

In the preamble to the F&I Agreement, FWS and the Dealers state that "[d]ealer desires to offer products and/or services as described herein and/or on JM&A's Website ("Program(s)") pursuant to which JM&A will be obligated to provide certain services and/or products to Dealer and/or Dealer's customers, as applicable[.]"  SMF Ex. 4, at Premier_000168.

3.  The PPM

The PPM is one of a number of F&I Products available to the Dealers under the F&I Agreement.  *See* SMF Ex. 4, at Premier_000168, 000174 (defining "products and/or services" under the F&I Agreement and identifying different F&I Products, respectively).  The PPM is not a manufacturer's new vehicle warranty or extended vehicle warranty.  *Id.*, ¶ 10.  The PPM is an

---

[2] Although the F&I Agreement indicates that it is for 25 Falmouth Road, Inc., the F&I Agreement applies to both Dealers.  *See* SMF, ¶ 8.

[3] The F&I Agreement defines references to FWS as "JM&A," but for simplicity, this Memorandum will continue to refer only to "FWS."

FWS product that is not offered by a Volvo entity. *Id.*, ¶¶ 7-9. Under the PPM, the Dealers sell contracts for the PPM to consumers. *Id.*, ¶ 10.

    4.  <u>Dealer Remittance</u>

Section 5 of the F&I Agreement outlines the administration of payments for the sale of F&I Products, including the PPM, to consumers. *See* SMF Ex. 4, at Premier_000169. The Dealers earn revenue from the sale of PPM contracts to consumers. SMF ¶ 11. The Dealers remit a portion of the revenue for each PPM contract sale to FWS. *Id.* The Dealers do not make any payments to Volvo Car USA or Volvo Financial related to the sale of the PPM contract to consumers. *Id.*, ¶ 12. No sale proceeds are remitted to Volvo Car USA. *Id.*

    5.  <u>Reimbursement for Services Under the PPM</u>

Section 7 ("Pre-Paid Maintenance Plan Program and Administration") of the F&I Agreement specifies the terms of reimbursement for services performed pursuant to the PPM. *See* SMF ¶ 13. Specifically, Section 7B describes the reimbursement to the Dealers for the PPM, whereby the Dealers "request reimbursement from JM&A as maintenance services are provided to customers." *See* SMF Ex. 4, at Premier_000169. FWS agreed to reimburse the dealer for the value of the services according to the Maintenance Service Reimbursement Tiers and the corresponding tier amounts at the time of the contract of sale, which are listed on a separate schedule and/or the FWS website. *Id.* The F&I Agreement does not cover work performed or conducted by the Dealers pursuant to a Volvo manufacturer's warranty. *Id.*, ¶ 14. Claims for reimbursement for services conducted pursuant to a warranty are submitted directly to Volvo Car USA. *Id.* Claims submitted for reimbursement for services performed pursuant to the PPM are submitted to FWS and paid under terms of the F&I Agreement. *Id.*

    6.  <u>The Right to Terminate</u>

Under Section 1, the period of the F&I Agreement began on the Effective Date, June 1, 2018, and continued for one year.  *See* SMF Ex. 4, at Premier_000168.  After that time period lapsed, any party had the right to "terminate this Agreement at any time" upon thirty days written notice.  SMF ¶ 15.  The Dealers have not provided written notice of termination at any time.  *Id.*, ¶ 16.

### 7.  The Integration Clause

Section 2 of the F&I Agreement states that the F&I Agreement "constitutes the full and entire understanding and agreement between all parties herein[.]"  *Id.*, ¶ 17.  The F&I Agreement does not incorporate or adopt any agreements entered into between the Dealers and Volvo Car USA.  *Id.*

## C.  Chapter 93B

Chapter 93B regulates business practices between motor vehicle manufacturers, distributors, and dealers.  *Petrosyan v. Maserati N. Am., Inc.*, No. 19-cv-12425, 2020 WL 2104789, at *3 (D. Mass. May 1, 2020).  The statute is aimed primarily at protecting motor vehicle dealers from injury caused by unfair business practices of manufacturers and distributors with which they are associated, generally in a franchise relationship.  *Mass. State Auto. Dealers Ass'n v. Tesla Motors MA, Inc.*, 469 Mass. 675, 676 (2014).  Section 9 of the statute governs how manufacturers and distributors must compensate dealers for honoring warranties.  *W.N. Motors, Inc. v. Nissan N. Am., Inc.,* 2021 WL 4554091, at *1 (D. Mass. Oct. 5, 2021) (Burroughs, J.).  Particularly relevant is the following excerpt from Sec. 9(b)(1):

> A manufacturer or distributor shall specify in writing to each of its dealers the dealer's obligations for predelivery preparation and warranty service on its products and shall compensate the dealer for such preparation and service. A manufacturer or distributor shall within a reasonable time fulfill its obligations under all express warranty agreements made by it with respect to a product manufactured, distributed or sold by it and shall adequately and fairly compensate any motor vehicle dealer who, under its franchise obligations, furnishes labor, parts and materials under

5

the warranty or maintenance plan, extended warranty, certified preowned warranty or a service contract, issued by the manufacturer or distributor or its common entity, unless issued by a common entity that is not a manufacturer…

### D.  The Claims

The Dealers allege that they are entitled to receive the same rate of reimbursement for labor for services that they perform pursuant to the PPM as they receive for warranty repairs under G.L c. 93B § 9.  *See, e.g.*, Complaint, ECF No. 37, ¶¶ 42-46.  The Dealers contend that failing to pay the warranty repair rate for services under the PPM constitutes violations of Chapter 93B §§ 4, 9. *See generally id*.  The Complaint asserts six separate counts:

> Count I and II – Violation of G.L. c. 93B § 9(b)(1)
>
> Count III and VI– Violation of G.L. c. 93B § 9(b)(2)(vii)
>
> Count IV – Violation of F.L. c. 93B § 4(c)(9)
>
> Count V – Violation of F.L. c. 93B § 4(c)(12)

*Id.*

## III.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, the Dealers cannot make a showing that the conduct alleged in the Complaint constitutes a violation of any provision of Chapter 93B.  The legal standard on a motion for summary judgment is well-settled: Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of any element essential to that party's case, and on which that party bears the burden of proof at trial. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  A material fact is one which, under the substantive law governing the issue, might affect the outcome of the suit.  *See Celotex Corp.* 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").  When responding to a motion for summary

judgment, the plaintiff cannot rest on "mere allegations" but must instead set forth specific facts by affidavit or otherwise to meet its burden. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992).

## IV.   ARGUMENT

Summary judgment must be entered in favor of the Defendants because there is no genuine issue of material fact – the Dealers cannot establish the necessary elements of the statutory claims. As a preliminary matter, Chapter 93B only governs "manufacturers and distributors."  Neither FWS nor Volvo Financial are manufacturers or distributors of motor vehicles, or "franchisor representatives" as defined in Chapter 93B.  *See* G.L. c. 93B § 1.  Accordingly, Chapter 93B claims against those entities must be dismissed on that basis alone.

In addition, the Dealers fail to satisfy specific elements of each of the claims asserted pursuant to Chapter 93B, including that Sec. 9(b)(1) applies to provision of warranties issued by the manufacturer or distributor, not F&I Products governed by contract with FWS.  *See W.N. Motors, Inc.,* 2021 WL 4554091, at *1.  For similar reasons, Sec. 9(b)(2)(vii) does not apply here – the PPM is not a policy, procedure, or program of Volvo Car USA inconsistent with Sec. 9(b), it is an offering of FWS by agreement with the Dealers and outside the scope of Sec. 9(b).  The provisions of Sec. 4(c) also do not apply to the PPM offered through agreement with FWS and where the Dealers receive the benefits of transactions related to the PPM.  Ultimately, nothing in these statutory provisions governs the vehicle maintenance services performed pursuant to the PPM.  Had the Massachusetts legislature intended for Chapter 93B to apply here, it would have done so expressly.  The tortured reading of Chapter 93B that is required to support these claims also requires that this Court interfere with the F&I Agreement in order to rewrite the contract in the Dealers' favor.  For all the reasons described herein, summary judgment should enter on all claims.

## A. Sec. 9(b) Does Not Apply to the PPM Because FWS and Volvo Financial Are Not Manufacturers or Distributors

The claims asserted under G.L. c. 93B § 9(b) (Counts I-III, VI) fail as a matter of law. As set out below, the undisputed facts demonstrate that this statute does not apply to FWS, Volvo Financial, or the PPM. The Dealers are unable to offer any evidence to support the essential elements of these claims.

### 1. FWS is not a manufacturer or a distributor

The very first line of Sec. 9(b)(1) states that the provision specifically applies to "a manufacturer or distributor."[4]   Likewise, Sec. 9(b)(2)(vii) only governs violations by "a manufacturer or distributor." It is undisputed that FWS and Volvo Financial are neither. *See* SMF ¶¶ 5-6. FWS is not engaged in the business of manufacturing, selling, or distributing new or used motor vehicles. *See* SMF ¶ 5. There is no franchisor/franchisee relationship between FWS and the Dealers. *See* SMF Ex. 4. FWS is an independent company that sells and administers various motor vehicle financial products, including both branded (*i.e.* Volvo and other manufacturer) and non-branded products to dealers. SMF ¶¶ 5-6. The terms of the relationship between the Dealers and FWS are governed by the F&I Agreement. *See* SMF Ex. 4. Because FWS is not a

---

[4] The statute defines a manufacturer as "any person **engaged in the business of manufacturing or assembling new and unused motor vehicles**; any person holding majority ownership in any person encompassed within this definition of the term "manufacturer"; or any branch office or division maintained by the person for directing and supervising a franchisor representative." G.L. c. 93B, § 1 (emphasis added).

"Distributor" is defined as "any person who is not a manufacturer or a motor vehicle dealer, and who **sells or distributes new and unused motor vehicles to motor vehicle dealers** within the commonwealth or to any wholesaler who in turn sells or distributes such vehicles to motor vehicle dealers within the commonwealth; or any branch office or division maintained by any of such persons for directing and supervising their franchisor representatives. G.L. c. 93B, § 1 (emphasis added).

manufacturer or distributor of motor vehicles for the purposes of Sec. 9(b), the statute does not apply.

### 2. FWS is not a "common entity" of Volvo Car USA

The requirements of Sec. 9(b)(1) may, in certain circumstances, apply to a "common entity" of the manufacturer or distributor; however, FWS is not a "common entity" of any Volvo manufacturer or distributor. "Common entity" is not defined in the statute, *see* G.L. c. 93B, § 1, however, the context of the statute evidences a clear meaning – a common entity is one that conducts itself as if it were the manufacturer or distributor of motor vehicles. *See, e.g.,* G.L. c. 93B § 9(b)(1) ("…to repair a motor vehicle as a result of a manufacturer or distributor's or common entity's recall, campaign service, authorized goodwill, directive or bulletin…"). With respect to the corporate relationship of the parties, FWS is not a parent corporation or corporate affiliate of Volvo Car USA or any Volvo entity. SMF ¶ 5. Accordingly, FWS is not a common entity to a manufacturer or distributor under Sec. 9(b)(1).

### 3. Even if FWS were a "common entity," it is not a manufacturer or distributor; therefore, Sec. 9(b) does not apply

Even if FWS were considered a common entity of Volvo Car USA – it is not – the statute still does not apply to a common entity that is not a "manufacturer." *See* G. L. c. 93B § 9(b)(1). The text of Sec. 9(b)(1) straightforwardly states that the provision does not apply to a common entity "that is not a manufacturer." In this case, even if FWS had a "common entity" relationship with Volvo Car USA – it does not – the section still does not apply where FWS is not a manufacturer of motor vehicles. *See supra*, fn. 4.

### 4. Sec. 9b does not apply to Volvo Financial because it is not a manufacturer or a distributor

Because Volvo Financial is not a manufacturer or distributor of Volvo motor vehicles, Sec. 9(b) does not apply. *See* SMF ¶ 4. Sec. 9(b)(1) highlights the deficiencies in the Dealers' claims. A plain reading of this provision finds that even if the PPM had been issued by Volvo Financial – a corporate affiliate of Volvo Car USA – that would still be insufficient to support the claims that the Dealers are asserting because Volvo Financial is also not a manufacturer of motor vehicles. *Id*. In this case, the Dealers' claims are even more attenuated in asserting that FWS, an independent entity that has no corporate or contractual relationship with the distributor Volvo Car USA, and which does not manufacture, sell, or distribute motor vehicles, somehow falls within the scope of Chapter 93B.

**B. Sec. 9(b)(1) Does Not Apply To the PPM Because It Is Not "Warranty Service" and is Not "Issued By the Manufacturer or Distributor"**

The claims asserted by the Dealers also fail because services performed under the PPM are not a "warranty service" as described in G.L. c. 93B § 9(b). *See W.N. Motors, Inc.,* 2021 WL 4554091, at *1. The Dealers admit that the PPM is not a warranty service. *See* SMF ¶¶ 10, 14. The language of Sec. 9(b)(1) repeatedly affirms that it is intended to apply to services that are governed by a "warranty" between the manufacturer or distributor and a dealer:

> A manufacturer or distributor shall specify in writing to each of its dealers the dealer's obligations for predelivery preparation and warranty service on its products and shall compensate the dealer for such preparation and service. A manufacturer or distributor shall within a reasonable time fulfill its obligations under all express warranty agreements made by it with respect to a product manufactured, distributed or sold by it and shall adequately and fairly compensate any motor vehicle dealer who, under its franchise obligations, furnishes labor, parts and materials under the warranty or maintenance plan, extended warranty, certified preowned warranty or a service contract, issued by the manufacturer or distributor or its common entity, unless issued by a common entity that is not a manufacturer…

G.L. c. 93B § 9(b)(1). The first sentence of Sec. 9(b)(1) indicates that it concerns "the dealer's obligations for predelivery preparation and **warranty service** on [the manufacturer's or

distributor's] products[.]" *Id.* (emphasis added).  The second sentence of Sec. 9(b)(1) places the duty upon the manufacturer or distributor to fulfill its obligations "under all **express warranty agreements** made by it with respect to a product manufactured, distributed, or sold **by it**."  *Id.* (emphasis added).  The third sentence further evidences that the provision applies to a motor vehicle dealer who, "**under its franchise obligations**, furnishes labor, parts and materials under the warranty or maintenance plan, extended warranty, certified preowned warranty or a service contract, ___*issued by the manufacturer or distributor or its common entity*___, unless issued by a common entity that is not a manufacturer[.]"  *Id.* (emphasis added)[5]

Under each of the sentences above, the Massachusetts Legislature specified that the provision applies to warranties that are issued by the manufacturer or distributor.  This comports with the rationale for enacting G.L. c. 93B.  *See Beard Motors, Inc. v. Toyota Motor Distributors, Inc.*, 395 Mass. 428, 433 (1985) (describing the intention of the Massachusetts Legislature).  In *Beard Motors*, the Court described the purpose of G.L. c. 93B:

> General Laws c. 93B was enacted in recognition of the potentially oppressive power of automobile manufacturers and distributors in relation to their affiliated dealers. The act cover[s] transactions between dealers and the public, but dwel[ls] especially on the relations among manufacturers, distributors, and dealers (which, however, must in the end also affect consumers). [The act] was a response to long-recognized problems including that of the coercion of dealers by automobile manufacturers through such means as the cutting off or purposeful manipulation of the supply of cars. Prior to the enactment of G.L. c. 93B, manufacturers and distributors had "virtually complete control over their dealers as a result of their awesome power to terminate or fail to renew a franchise." They consistently restricted the dealer's right to sell, transfer, or capitalize his dealership, and refused to permit a dealer to sell his dealership at any price which exceeded the net value of its tangible assets.

> …

---

[5] That the provision references a "maintenance plan" does not rescue the Dealers' claims.  The use of the term in the full context of the sentence confirms that the work performed must be part of the Dealers' "franchise obligations" and the "maintenance plan" must be issued by the manufacturer. *Id.*  The PPM does not cover warranty services and is not "issued by" the distributor – it is offered pursuant to the F&I Agreement.  *See* SMF Ex. 4; SMF ¶ 14.

It is clear from a reading of G.L. c. 93B as a whole that the intention of the Legislature was to protect motor vehicle franchisees and dealers from the type of injury to which they had been susceptible by virtue of the inequality of their bargaining power and that of their affiliated manufacturers and distributors.

*Beard Motors*, 395 Mass. at 432–33 (internal citations omitted).  In *Beard Motors*, the prospective purchaser of a motor vehicle dealership brought suit based upon the distributor's denial of the assignment of a franchise.  *Id.*, at 428.  The Supreme Judicial Court found that the dealer was seeking protections from the statute which were "not within the area of legislative concern that resulted in the enactment" of Chapter 93B.  *Id.*, at 433-34 (remanding for entry of judgment of dismissal on 93B claim); *see also Massachusetts State Automobile Dealers Association, Inc. v. Tesla Motors MA, Inc.*, 2012 WL 7985774, at p. 6 (Mass. Super. Ct. Dec. 31, 2012) ("…the Legislature's purpose in enacting Chapter 93B was to protect motor vehicle dealers from their affiliated manufacturers[.]").  Here, similarly, the Dealers' claims do not fall within the area of legislative concern expressed in Chapter 93B.

Sec. 9(b) concerns obligations that arise from a warranty issued by a manufacturer.  *See W.N. Motors, Inc.*, 2021 WL 4554091, at *1.  Section 9 "governs how manufacturers and distributors must compensate dealers for **honoring warranties**."  *Id.* (emphasis added); *see also Wallace Motor Sales, Inc. v. Am. Motors Sales Corp.*, 780 F.2d 1049, 1061 (1st Cir. 1985) ("warranty work" described in conjunction with the requirements of franchise agreement); *see also* G.L. c. 93K, § 4 (describing "warranty or recall repair work" as work performed pursuant to a "franchise agreement.")[6]  The alleged dispute concerning the reimbursement rate for PPM services

---

[6] "While courts should look to dictionary definitions and accepted meanings in other legal contexts, their interpretations must remain faithful to the purpose and construction of the statute as a whole[.]"  *Am. Honda Motor Co. v. Bernardi's, Inc.*, 432 Mass. 425, 430 (2000) (quoting *Heritage Jeep–Eagle, Inc. v. Chrysler Corp.*, 39 Mass. App. Ct. 254, 258 (1995).

arises out of a contractual relationship between the Dealers and FWS, not out of a warranty issued

by the manufacturer or distributor.  *See* SMF Ex. 4.  The very existence of this contractual

agreement – which the Dealers agreed to in order to sell the PPM and subsequently perform

maintenance services pursuant to a reimbursement tier – defeats all of the claims that are asserted

under Chapter 93B.[7]

### C. Sec. 9(b)(2)(vii) Does Not Apply Because the PPM is Not a "Policy, Procedure, or Program" of Volvo Car USA That Is Inconsistent with Sec. 9(b)

As noted above, summary judgment must enter for claims asserted pursuant Sec.

9(b)(2)(vii) because FWS is neither a manufacturer nor distributor of motor vehicles.  The section

states:

> (vii) A manufacturer or distributor shall not require, influence or attempt to
> influence a motor vehicle dealer to implement or change the prices for which it sells
> parts or labor in retail customer repairs. A manufacturer or distributor shall not
> implement or continue a policy, procedure or program to any of its dealers in the
> commonwealth for compensation which is inconsistent with this subsection.

G.L. c. 93B (b)(2)(vii).  The provision similarly does not apply to Volvo Financial, which is also

not a manufacturer or distributor of motor vehicles.  *See* SMF ¶ 4.

In addition, judgment as a matter of law must enter as to these claims because the PPM is

not "a policy, procedure, or program" that has been "implemented" by the distributor, Volvo Car

USA.  *See W.N. Motors, Inc.*, 2021 WL 4554091, at *4.  The PPM is not "implemented" by Volvo

Car USA because the PPM is offered by FWS, and the Dealers entered into the F&I Agreement

with FWS in order to sell the PPM and service motor vehicles pursuant to the PPM.  Furthermore,

the policy, procedure, and program described in Sec. 9(b)(2)(vii) must also be "inconsistent with

---

[7] To the extent that the Dealers allege that they were required by Volvo Car USA or obligated by
their Retailer Agreements to participate in the F&I Agreement – neither of which is true – the
claims still fail because they fall outside of the scope of the statute.  Sec. 9 concerns reimbursement
for warranty services, which the Dealers concede is not covered by the PPM.  *See* SMF, ¶ 14.

this subsection." The decision in *W.N. Motors* makes clear that Sec. (b)(2)(vii) is not meant to apply where the conduct alleged to be a violation is not within the scope of Section 9(b):

> Coastal takes issue with the price that NNA charges for cars because that price includes a surcharge designed to offset NNA's costs in complying with § 9(b)(2). The price that NNA charges Coastal for cars, however, **is not a "policy, procedure or program ... for compensation which is inconsistent with" § 9(b)** because § 9(b) does not address how much distributors (like NNA) can charge dealers (like Coastal) for vehicles. **Section 9(b) addresses how distributors (like NNA) must compensate dealers (like Coastal) for making warranty repairs**.

2021 WL 4554091, at *4 (internal citations omitted.) (emphasis added.)   This section's requirement of a manufacturer-implemented "policy, procedure, or program" does not apply to the terms of the F&I Agreement that the Dealers entered to service motor vehicles outside of the context of the vehicle warranty.  As in *W.N. Motors*, the reimbursement tier in the F&I Agreement is not "policy, procedure, or program" inconsistent with Sec. 9(b), because the PPM is outside the scope of Sec. 9(b).  Accordingly, summary judgment should enter.

### D.  If the Massachusetts Legislature Intended For G.L. c. 93B § 9 To Apply Here, It Would Have Done So Expressly

The Massachusetts Legislature did not intend to apply the terms of G.L. c. 93B § 9 to a contractual relationship between a dealer and an entity that was neither a manufacturer nor distributor; if it had, it would have done so expressly.[8]  This Court's recent decision to dismiss Sec. 9(b)(2) claims in *W.N. Motors, Inc.* is persuasive.  *See* 2021 WL 4554091, at *3.  In *W.N. Motors*, the dealer plaintiff filed a lawsuit against the distributor defendant alleging violations of Sec. 9(b) including, *inter alia*, an assessment of a "Warranty Supplemental Expense Charge" on

---

[8] When the Massachusetts Legislature included the language in Sec. 9(b) concerning "the manufacturer or distributor or its common entity…" it specifically excluded from the terms of the statute any common entity that "that is not a manufacturer."  *See* G.L. c. 93B § 9(b)(1). This is a clear demonstration of intent to exclude third party entities like FWS.  *See id*.  Under no reasonable interpretation of the statute could the provision apply to an entity that was (1) not a common entity of the manufacturer; and (2) that was also not a manufacturer.  This is fatal to the Dealers' claims.

each new vehicle sold to the plaintiff.[9]   The Court noted first that it must begin the analysis with the text of the statute.  *Id*. (citing *Phillips v. Equity Residential Mgmt., L.L.C.*, 478 Mass. 251, 257 (2017) ("As the question turns on a matter of statutory interpretation, we begin with the text of the statute.").  Finding no explicit prohibition to a warranty surcharge in the text of the statute, the Court stated:

> If the Massachusetts Legislature intended to forbid distributors from assessing surcharges (or utilizing other cost recovery methods), it would have done so explicitly, as other legislatures in nearby states have done.  As a general matter, courts should not read language into statutes. *See Simmons v. Clerk-Magistrate of Bos. Div. of Hous. Ct. Dep't*, 858 N.E.2d 727, 733 (Mass. 2006) ("We will not add words to a specific statute that the Legislature did not put there ....").

*Id.*, at * 3.  The Court also rejected the dealer's overly broad conception of what is prohibited by the statute.  *Id*. at *4.  The Court interpreted the dealer's argument to be that "because Chapter 93B is designed to protect dealers and prohibits unfair and/or deceptive conduct, and because the Warranty Charge harms [plaintiff], the Warranty Charge must be precluded by the statute."  *Id.* The Court noted that there is nothing deceptive or unfair about raising prices to account for increased compliance costs where those charges are not expressly prohibited by the statute.  *See id.*

This analysis of Sec. 9(b) applies with even more force to the factual circumstances of this case.  At least in *W.N. Motors* the claim concerned the imposition of a warranty surcharge *by the distributor*.  *Id*., at *3.  In order for the Dealers to proceed on their theory of recovery, this Court must add to and redefine the words present in the statute, including the entities to whom, and the services for which, the statute applies.   FWS and Volvo Financial are not manufacturers or distributors and this Court would be required to rewrite the statute to apply these terms to a wholly

---

[9] The Court referred to it as a "warranty surcharge."  *Id.*, at *3.

new class of individuals.  The PPM is not warranty service and this Court would be required to radically expand the scope of the statute to include non-warranty services.  This would alter the statute contrary to Massachusetts law.  *See id.*, at *3 (citing *Simmons*, 858 N.E.2d at 733).  The Dealers entered into an agreement with FWS to sell the PPM to consumers and to service motor vehicles pursuant to the terms of the F&I Agreement, and never opted to terminate the F&I Agreement.  This is not unfair and deceptive, but more critically, is not a viable claim for recovery under Chapter 93B.  Contrary to the contention of the Dealers, this statute does not prohibit the conduct alleged and this Court should reach the same conclusion as *W.N. Motors*.  Accordingly, summary judgment should enter as to all of the Dealers' claims.

### E.  The Claims Asserted Under G.L. c. 93B § 4(c) Do Not Apply Here

The claims asserted under G.L. c. 93B § 4(c) (Counts IV and V) similarly do not apply to the facts here based on the plain language of the statute.  First, Sec. 4(c) applies only to a "manufacturer, distributor, or franchisor representative."  As noted above, FWS and Volvo Financial are not manufacturers or distributors, and the statute defines "franchisor representative" as follows:

> [A] a person employed by a manufacturer or distributor for the purpose of promoting the sale of new motor vehicles or for supervising, servicing, instructing or contracting motor vehicle dealers or prospective motor vehicle dealers; and any officer, agent or other authorized representative of a manufacturer or distributor.

G.L. c. 93B § 1.  FWS does not satisfy this definition of "franchisor representative."  It is neither employed by, or an agent or authorized representative of, Volvo Car USA.  FWS entered into a commercial agreement with Volvo Financial in order to develop and offer F&I Products and has no corporate or contractual relationship with Volvo Car USA.  *See* SMF, ¶¶ 5-6.  Likewise, Volvo Financial, although affiliated with Volvo Car USA, is not officer, agent, or other authorized

representative of a distributor; it is a separate corporation that provides financial services.  *See*

SMF ¶ 4.

Second, nothing in Sec. 4(c)(9) prohibits the conduct alleged in the Complaint.  That

section states:

> (c) It shall be deemed a violation of subsection (a) of section 3 for a manufacturer,
> distributor or franchisor representative:
>
> (9) to obtain money, goods, services, anything of value, or any other benefit from
> any other person with whom the motor vehicle dealer does business, on account of
> or in relation to the transactions between the dealer and the other person as
> compensation except for services actually rendered, unless the benefit is promptly
> accounted for and transmitted to the motor vehicle dealer.

G.L. c. 93B § 4(c)(9).  Sec. 4(c)(9) does not apply to the conduct alleged here.[10]  The statute is

specifically concerned with protecting motor vehicle dealers from "unfair or deceptive" acts of the

manufacturer.  *Id*., § 3(a).  Here, the Dealers entered into an agreement with FWS that sets the

terms of reimbursement for the PPM.  *See* SMF Ex. 4.  The *quid pro quo* of that F&I Agreement

is that Dealers are able to earn money via the opportunity to sell the PPM to consumers and receive

reimbursement for services under the F&I Agreement's terms, outside the context of a

manufacturer-issued warranty.  That agreement contains an integration clause and a clause

allowing the Dealers to terminate the agreement.  SMF ¶¶ 15, 17.  Volvo Car USA is not a party

to the F&I Agreement and does not receive money from the sale of the PPM.  *See* SMF Ex. 4;

SMF ¶12.  Moreover, Sec. 4(c)(9) expressly concerns a situation where a distributor is receiving a

benefit from the dealers' transactions ***that the dealers themselves do not receive***.  *See* G.L. c. 93B

---

[10] Defendants are not aware of any case law precedent interpreting Sec. 4(c)(9) specifically, or
otherwise finding conduct to be violative of Sec. 4(c)(9).  A review of decisions invoking Sec. 4
generally concern a manufacturer or distributor granting franchises to dealers in the same retail
market area as existing franchisees, *see, e.g., Seacoast Motors of Salisbury, Inc. v.
DaimlerChrysler Motors Corp.*, 271 F.3d 6, 18 (1st Cir. 2001), and/or arising out of the specific
terms of a retailer agreement.  *See Clair Intern., Inc. v. Mercedes-Benz of North America, Inc.*, 124
F.3d 314, 320 (1st Cir. 1997).

§ 4(c)(9).  The benefits from the "transactions between the [D]ealer[s] and the other person" are received by the Dealers in the form of revenue earned from the sale of the PPM to customers and the reimbursement for services performed pursuant to the PPM by FWS.

Lastly, for all the reasons set out above, Sec. 4(c)(12) does not apply here. That section states:

> (c) It shall be deemed a violation of subsection (a) of section 3 for a manufacturer, distributor or franchisor representative:
>
> (12) to act to accomplish, either directly or indirectly through any parent company, subsidiary, or agent, what would otherwise be prohibited under this chapter on the part of the manufacturer or distributor. This section shall not limit the right of any parent company, subsidiary, or agent to engage in business practices otherwise lawful in accordance with the usage of the trade in which it is engaged.

G. L. c. 93B, § 4(c)(12).  This provision only applies to conduct that would be prohibited under Chapter 93B – because the acts of FWS and Volvo Financial, and the PPM itself, do not fall within any part of the statute, this provision does not apply.  Consequently, summary judgment should enter as to the claims brought under G. L. c. 93B, § 4(c).

## F.  This Court Should Not Rewrite the Terms of the F&I Agreement

The Dealers do not dispute that they entered into the F&I Agreement with FWS.  *See* SMF ¶ 8.  Notably, the Dealers do not assert any claims in this action under a breach of contract theory. The thrust of the allegations of the Complaint are the Dealers' dissatisfaction with the reimbursement rates for the services performed pursuant to the PPM.  But as noted above, the Dealers have not terminated the F&I Agreement despite terms that allow for it.  *Id*., ¶ 16.  Instead, the Dealers ask this Court to interfere with the F&I Agreement and rewrite the terms so that the Dealers obtain more favorable reimbursement rates for services performed pursuant to the F&I Agreement.  It is the general rule that courts should not rewrite contracts, especially if the two contracting parties are two corporations acting at arms length. *See Fowler v. Boise Cascade Corp.*,

948 F.2d 49, 56 (1st Cir. 1991); *see also Humbert v. Dworman*, Mass. Super. Ct. No. 03-2217A, 2005 WL 2461969, at *5 (July 22, 2005) ("[W]e also reject the notion that courts or juries should rewrite a fully negotiated contractual agreement that so precisely sets out the rights and obligations of two sophisticated parties…") (quoting *Turner v. Johnson & Johnson*, 809 F.2d. 90, 98 (1st Cir. 1986); *CC & F Wells-First Managing Member, LLC vs. RCG LLP 135 Wells, LLC*, Mass. Super., No. SUCV20170620BLS1, 2017 WL 2541031, at *3 (Mass. Super. Ct. Apr. 7, 2017) (citing *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) (a court will "not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal")). Essentially, what the Dealers are asking this Court to do is to rewrite a contract in their favor to allow them to obtain more beneficial reimbursement terms unrelated to any warranty services provided for Volvo Car USA.  The Court should reject that invitation and should instead grant the Defendants' Motion for Summary Judgment as to all claims, Counts I-VI.

## V.  CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment should be allowed.

> VOLVO CAR USA LLC and FIDELITY
> WARRANTY SERVICES, INC., VOLVO CAR
> FINANCIAL SERVICES U.S., LLC
>
> by their attorneys,
>
>
> */s/ Stephen I. Hansen*
> _____
> Stephen I. Hansen (BBO # 679134)
> Alan Wong (BBO # 687618)
> Shook, Hardy & Bacon L.L.P.
> One Federal Street, Suite 2540
> Boston, MA  02110
> (617) 531-1141
> sihansen@shb.com
> awong@shb.com

Colm Moran (*pro hac vice*)
Shook, Hardy & Bacon L.L.P.
2049 Century Park E Suite 3000
Los Angeles, CA  90067
(424) 285-8330
cmoran@shb.com


## CERTIFICATE OF SERVICE

I, Stephen I. Hansen, hereby certify that, on this 18th day of November, 2022, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of  Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*Stephen I. Hansen*
Stephen I. Hansen

20